DAN C. ARENDT, APPELLEE, V. NORTH AMERICAN LIFE INSURANCE COMPANY, APPELLANT.

FILED FEBRUARY 16, 1922. No. 21773.

1. **Judgment:** JUDGMENT ON PLEADINGS. It is the duty of the court to render a judgment in favor of a party where from the pleadings such party is entitled thereto, although a verdict of the jury may have found in favor of the other party.

2. **Insurance:** CONTRACT: EXCEPTIONS. Where a policy of life insurance insured a person against death occurring in any part of the world and in any occupation or from any cause, except military or naval service in time of war, the company issuing

Arendt v. North American Life Ins. Co.

the same is liable, even though the insured, at his death, was in the military service in time of war, if his death was not incident to or caused by such military service.

3. ———: ———: ———. Where a life insurance policy provided that it shall be incontestable after one year, except for military or naval service in time of war, which service requires the written consent of the president of the insurance company and the payment of an extra premium not exceeding 3 per cent. of the face of the policy, but does not definitely fix such increased premium, and that without such consent the amount payable thereunder should be such a sum as the premiums paid would have purchased on the basis of such increased premiums, and the insured entered the military service without obtaining the consent required, such provision for reducing the amount of liability is void for uncertainty in not fixing the amount of extra premium.

4. ———: NOTICE. Where an insurance policy containing the above provision was issued, and the insured entered the military service in time of war without obtaining the consent required and no extra premium was fixed, but an agent of the company issuing the policy solicited and secured a change of the policy to term insurance and secured a premium on the basis of such change, with knowledge that the insured was engaged in military service in time of war, and the company made the change of policy and received the premium therefor, then the knowledge of the agent would be the knowledge of and binding upon the company.

5. Principal and Agent: NOTICE. Notice to the agent is notice to the principal, where such notice is received by the agent while acting within the scope of his authority.

6. Insurance: CONTRACT: CONSTRUCTION. Where the language of the policy of insurance is doubtful, or clauses therein are in seeming conflict, it is to be construed most strongly against the insurer, because such company has chosen the language of the policy.

7. ———: ———: INCREASED PREMIUMS: WAIVER. Where the insurance company does not fix the amount of increased premiums that are provided for in the policy, on account of military service, or make demand therefor or give the insured any notice of its intention to claim the same, but receives the amount of premiums fixed in the policy as payment in full, the company will be deemed to have waived all right to such increase, and the

policy, in case of death of insured, will not be reduced or forfeited in any amount. :

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*W. W. Young* and *Good & Good,* for appellant.

*C. C. Flansburg, contra.*

Heard before MORRISSEY, C.J., ROSE and ALDRICH, JJ., BUTTON and COLBY, District Judges.

COLBY, District Judge.

Dan C. Arendt, appellee, brought suit in the district court for Lancaster county against the North American Life Insurance Company, appellant, on a policy of life insurance.

The petition recites, in substance, that the defendant is a Nebraska life insurance company, formerly doing business as the German-American Life Insurance Company, and that on April 6, 1917, it issued its policy to one W. Cornell Arendt in the sum of $2,500, naming Dan C. Arendt, a brother of said insured, and appellee herein, as beneficiary; that in June, 1917, defendant amended its articles of incorporation by changing its name to North American Life Insurance Company; that, while said policy was in force, the insured, who was subject to military service under the selective draft act of the congress of the United States, was called on December 11, 1917, by the United States into military service, assigned to the branch of coast artillery, ordered into training at Fort Logan, Colorado, and remained there in training until September 16, 1918, when he was transferred to Camp Mills, Garden City, Long Island, U. S. A., preparatory to being sent overseas; that while said policy was in full force, and while the said insured was still in training at Camp Mills, he contracted pneumonia, from which he sickened and died on or about September 29, 1918; that up to the time of the death of said insured all premiums due on said policy had been paid and all

the conditions of said policy on the part of the insured had been duly performed.

The petition further alleges that on March 30, 1918, one C. E. Lowry, general agent of and in the employ of the defendant company, was informed by the father of plaintiff that the insured was in a training camp, as hereinbefore set forth, and he declined to pay the renewal premium, as requested by said agent, and that said agent then stated that the premium could be reduced by changing the form of the policy to term insurance, and that said policy, for its full face value, would continue in force on the payment of such reduced premium; and in reliance upon said statement the father of plaintiff, in order to continue the policy in force, paid the premium to said agent and delivered the policy of insurance to him, who, in turn, forwarded it and said premium to defendant, and that on April 3, 1918, defendant indorsed on said policy, "Policy changed to term insurance," which indorsement was signed by G. L. E. Klingbeil, president, and D. D. Hall, secretary, of said company, and was written under a general heading which provided, "No change of plan of policy will be recognized until indorsed on this policy by the company at the home office, and the signature of the president and secretary affixed to such indorsement;" that after such indorsement defendant returned said policy, together with a receipt for said premium paid.

The plaintiff's petition further states the facts required in an ordinary cause of action on the policy, and sets out the policy with certain other facts relied upon to show a waiver of the benefit of the war clause and military service contained in said policy. It is also alleged that $850 was paid to plaintiff on account of the policy, and prays judgment for $1,650, alleged to be the balance due on such policy, with interest, attorney's fees and costs.

The defendant company for answer to plaintiff's petition denies each and every allegation therein con-

tained, excepting such admissions as are admitted in the answer. The defendant admitted its incorporation, business, the issuance of a certain policy of insurance on the life of W. Cornell Arendt, payable to plaintiff, alleged that one George Arendt, father of insured, without authority and as a volunteer, converted said policy from the "twenty pay life plan" to the "term insurance plan," and paid the second annual premium, amounting to $32.73, but alleged it was unable to state whether the policy attached was a correct copy or not.

Paragraph 4 of the answer alleged that the policy did not insure the life of W. Cornell Arendt against military or naval service in time of war, which risk was especially excluded by a provision in said policy printed in bold type at the top of the third page as follows: "This policy insures the life of the insured against death occurring in any part of the world and in any occupation, or from any cause, except military or naval service in time of war, aerial ascensions, aviation, professsional automobile racing and suicide or self-destruction as provided by subdivisions 3, 7 and 8, of section 1, on page 2 of this policy."

The subdivision 3, set out in said answer, is as follows: "This policy shall be incontestable after one year from date of issue except for nonpayment of premiums, or for military or naval service in time of war, during the premium-paying period, which military or naval service requires the written consent of the president and the payment of an extra premium, not to exceed 3 per cent. of the face of the policy; otherwise, without such consent, the amount payable thereunder shall be such a sum as the premiums paid would have purchased on the basis of the increased premiums, which sum shall not be less than the full reserve for the policy. This policy and the application therefor, a copy of which is hereto attached, constitute the entire contract between the parties hereto. All statements made by the insured shall, in the absence of fraud, be deemed representations and not

warranties, and no such statements shall avoid this policy, or be used in the defense of a claim hereunder, unless contained in the written application and unless a copy of such application be indorsed upon or attached to the policy when issued."

The answer further alleges that on August 10, 1916, about eight months prior to the issuance of the policy, the board of directors of defendant company formally fixed the extra premium, required to be paid by the insured in addition to the regular premium, for military and naval service in time of war at 3 per cent. of the face of the policy, which sum was required to be paid in advance at the time of the application for engaging in such service, and that upon the condition that the written consent of the president of the defendant company first be obtained; that the insured never made application to the defendant company or any of its officers for permission to engage in the military or naval service, never obtained the consent of the president or paid any extra premium required, but when the second premium became due it was converted into term insurance.

The answer further alleges that in December, 1917, W. Cornell Arendt enlisted in time of war in the military service of the United States, and on December 11th of that year was ordered into training at Fort Logan, Colorado, and about 15 days previous to his death was ordered to New York for the purpose of going overseas for service in a combat division, and that while there, in the military service in time of war, about September 29, 1918, he died, and that after proofs were made defendant paid plaintiff the sum of $850 on April 28, 1918.

It was also alleged in the answer that said C. E. Lowry was only a special agent of defendant company at the time of the payment to him of the second annual premium and of the change to term insurance, and that his chief duties were soliciting applications and assisting agents in the field to write business and procuring new agents;

that he was not the renewal agent of the defendant company, and that the payment to him of said premium was not binding upon the defendant company; that plaintiff, Dan C. Arendt, was a special agent of defendant company and solicited the application of W. Cornell Arendt, the insured, and that as such agent he was familiar with all the conditions and provisions of said policy, and a counterclaim was made against plaintiff for $74.32 as a balance alleged to be due defendant company on account.

The plaintiff's reply to the answer and cross-petition denied every allegation of new matter therein contained.

The case was tried to a jury, which returned a general verdict in favor of defendant on plaintiff's claim and against defendant on its counterclaim. Judgment was reserved by the court, and on plaintiff's motion the court gave judgment for the plaintiff, *non obstante veredicto,* for the sum of $1,789, and costs of the action, including $350 as fees for plaintiff's attorneys. Defendant company filed a motion for a new trial, which was overruled, and this court is asked to set aside the judgment of the lower court for errors assigned.

The first proposition of law to be considered by this court is under what conditions can a judgment *"non obstante veredicto"* be rendered.

Section 8008, Rev. St. 1913, provides: "Where, upon the statement in the pleadings, one party is entitled by law to judgment in his favor, judgment shall be so rendered by the court, though a verdict has been found against such party." This provision of the statute requires a careful examination of the pleadings, which must show from statements therein that one party is entitled by law to judgment in his favor, even though a verdict has been found by a jury against such party. The petition, answer and reply will be considered by the court, and the judgment, if allowed to stand, must be based upon and warranted by the allegations in such pleadings. It is necessary that the defendant's answer be

carefully read in connection with plaintiff's petition and reply, and a judgment is only authorized where the statements in these pleadings, under the law, disclose such right.

What were the real issues raised and what are the allegations of material facts contained in the pleadings upon which judgment must be based? Can the following questions be answered from the pleadings? Was W. Cornell Arendt, the insured, in the military service in time of war on the occasion of his death, within the meaning of the policy? No rate having been fixed after the issuance of the policy of insurance and no notice having been given the insured of the act of the board of directors eight months previous to the issuance of his policy fixing a rate of 3 per cent. additional for military service, was subdivision 3 of the policy affected thereby? As the policy provides that the sole contract between the parties is contained in the application and policy, is the language of subdivision 3 regarding military service, as written, so indefinite as to be void? Was the death of the insured caused by or the result of any military service in time of war? These statements must have been considered some of the facts at issue upon which the cause, under the court's instructions, was tried to the jury and a verdict rendered for the defendant. However, the main question before this court, involving some minor questions, is whether the district court should have rendered judgment for defendant company on the verdict, instead of entering judgment in favor of plaintiff on the pleadings notwithstanding such verdict.

It appears from an examination of the pleadings that W. Cornell Arendt, the insured, was in the military service in time of war within the meaning of the policy. It further appears that no notice was given to the insured personally of the act of the board of directors of defendant company, which took place eight months previous to the issuance of his policy, fixing a rate of 3 per cent. upon the face of the policy as additional

premium, and that the insured made no application for an extension of his insurance policy to cover military service in time of war; that the policy provided that the entire contract was contained in the application and policy, and that there was no demand made upon the insured for any increased premiums by reason of military service; and it further appears from the pleadings that the death of the insured was caused from pneumonia, and was not caused by or from any military service in time of war.

Do the pleadings show, when all the statements of fact contained therein are considered together, that the plaintiff is entitled to a recovery of the amount remaining unpaid on the insurance policy? The policy and application are set out in the petition. These, as has been stated, constitute the entire contract and there is no general denial that such was the policy issued by the defendant company. The allegation in defendant's answer that the defendant is unable to state whether the copy of the policy and the copy of the receipt are true copies of the originals is not such a denial. The petition pleads a change of the policy from a "twenty pay plan" to a "term insurance plan," and the indorsement thereof by defendant, signed by the proper officers; and the answer, in substance, while it alleges lack of authority in the agent, does not make a complete denial of the indorsement, but pleads its own construction of the clause relating to military or naval service in time of war.

It does not appear, and in fact it is not contended, that the policy became void by reason of the entrance of insured into the military service in time of war, but it merely provides that such service requires the consent of the president and the payment of an extra premium not to exceed 3 per cent. of the face of the policy. There is nothing in the policy or in the application fixing the amount of extra premium or requiring the insured to pay any certain additional amount. It may have been no amount, so far as the contract recites, but it

could not exceed 3 per cent. of the face of the policy. It would seem but fair and businesslike that, if the defendant company had insisted upon the collection of an additional premium, it should have fixed the same and given the insured or his beneficiary the option of continuing the policy in force, or having the same canceled. There is nothing to show in the undisputed statements contained in the pleadings that the insured had any personal knowledge or notice that the defendant company had fixed the amount of such increased premium or that it ever made any demand upon him whatever, and it can be fairly assumed that he had no such knowledge or notice.

The first and most important material fact to be considered is that regarding the cause of the insured's death and its bearing upon the liability contained in the defendant's contract with the insured.

The policy of insurance involved in this case is materially different regarding military service from those contained in some of the decisions cited by appellant, as a brief examination will show. The controlling clause in the policy in this case is that the defendant company insures "against death from any cause, except military or naval service in time of war." The question is not whether insured entered the military service in time of war, but whether his death was caused by, arose out of, or resulted from, such service. The authorities cited on behalf of appellant, as well as appellee, clearly make this distinction, and they will be considered and quoted at rather an unusual length for the purpose of clarifying this opinion.

In *Benham v. American Central Life Ins. Co.*, 140 Ark. 612, the policy exempted from death "while engaged in military or naval service in time of war, or in consequence of such service." The insured died of pneumonia while in camp, and the Arkansas supreme court, in construing this provision of the policy, used the following language:

"The words in the restricted clause now under consideration mean something more than death to the insured during the period of time he was in military service of the United States. The word 'engaged' denotes action. It means to take part in. To illustrate, a servant injured while in the operation of a train means that he must be injured while assisting or taking part in the operation of the train. An officer engaged in the discharge of the duties of his office is one performing the duties of his office. So here the words 'death while engaged in military service in time of war' mean death while doing, performing, or taking part in some military service in time of war; in other words, it must be death caused by performing some duty in the military service. That is to say, in order to exempt the company from liability, the death must have been caused while the insured was doing something connected with the military service, in contradistinction to death while in the service due to causes entirely or wholly unconnected with such service. This construction, we think, would be according to the natural and ordinary meaning of the words. By the use of the word 'engaged' it must have been intended that some activity in the service should have caused the death, in contradistinction to merely a period of time while the insured was in the service. This view is strengthened when we consider the words following: The words 'or in consequence of such service' relate to the word 'death.' So that death in 'consequence of such service' means death resulting from some act of the insured connected with the service, whether such death occurred during the period of such service or afterwards. * * * In the case at bar the insured died from influenza, and the record shows that the disease was prevalent throughout the United States, and that soldiers and civilians alike contracted it and died from it. The death of the insured, then, was in no sense caused by performing any military service, or in consequence of being engaged in military service."

In a later case from the same state, *Nutt v. Security Life Ins. Co.*, 142 Ark. 29, the court makes no ·distinction between the two cases, and there was also a dissenting opinion.

In the case of *Malone v. State Life Ins. Co.*, 202 Mo. App.. 499, the insured was killed by a, gunshot wound, and his officer stated that such death occurred while "in line of duty, a recruit, unassigned." The provision of the policy was: "If within five years from the date of this policy the insured shall ·engage, in any military or naval service in time of war (death from submarine or aviation· service, connected with actual warfare, as a part thereof, is a risk not covered by this policy), the liability of the company in event of, the death of the insured while so engaged, or within ·six months thereafter, as a result of such service, will be limited." etc. The court said: "In order, therefore, for defendant to escape liability on this ground, it devolves on it to prove both (1) that the insured's death occurred while he was engaged in military service, and (2) that such death resulted from or was caused by such service. The proof of the first by no means proves the second."

In the case of *Kelly v. Fidelity Mutual Life Ins. Co.*, 169 Wis. 274, the policy provided that, if the insured engaged within two years from the date of the policy in military or naval service, "and shall die within two years of the date of this policy as a result, directly. or indirectly, of engaging in such service or work, the liability of the company under this policy shall be limited to the return of the premiums paid." The court said: "A provision in a life insurance policy limiting the liability of the insurer to the return of premiums ·if the insured engaged in military service and died as a result thereof, directly or indirectly, does not limit liability for all deaths in the military service, but only for such as are due to some cause peculiar to the service, and the beneficiary can recover the full amount for the death of the insured in a motorcycle accident while he

was in the military service, far behind the firing lines."

In case of *Myli v. American Life Ins. Co.*, 43 N. Dak. 495, the facts were these: The insured enlisted in the United States navy, was sent to Dunwoody Institute in Minneapolis for training. The institute at the time was under the control of the United States naval department and furnished technical and other instruction to the enlisted man after the fashion of ordinary colleges. There were requirements as to drill and physical culture. After a brief illness while in training the insured died of influenza on October 7, 1918. The military clause was very similar to that in the instant case, and the court directed a verdict for the plaintiff. The following was a clause in such policy: "If, within five years from the date hereof, the death of the insured shall occur while engaged in military or naval service in time of war without previously having obtained from the company a permit therefor, the company's liability shall be limited to the cash premiums paid," etc. The court uses the following convincing language:

"It is contended that the effect of the provision is to automatically cancel the life insurance stipulation in the policy the moment the policy-holder becomes enlisted or inducted into the military or naval service without having previously obtained a permit therefor, and without complying with whatever provisions (not named in the policy) the company might wish to require concerning additional premiums. As against this contention the respondent asserts that it is the evident purpose of the stipulation to provide only against the consequences of extra hazard incident to actual service in connection with hostilities. * * * Reading the whole policy, we deem the intention of its various provisions with regard to the restrictions concerning military or naval service to be clear. * * * The important words in the clause relied upon and those which signify its correlation with the other provisions hereinbefore referred to are *'while engaged in military or naval service.'*

These words are descriptive of two forms of hazardous service that are not intended to be covered, and it is only while the insured is engaged in such service that the exemption is applicable. It is idle to say that because one's status is such that he must respond to orders from military or naval authority, he is in military or naval service within such a provision, when in fact there is nothing about his daily activities that suggests the least physical danger that would enhance an insurance risk.

"It would be highly unreasonable to assume that it was intended to exempt from liability on the mere ground of status. In the first place, if status were to be made the test, language should have been employed to make it apparent that it was to be the test. * * * In the late war we know that many men were inducted into the service and assigned to special duties for which they were fitted by training and which involved no hazard peculiar to military or naval service; also that many who were capable of receiving special technical training were assigned to institutions capable of giving that training, so that they might later on be better equipped for more highly specialized service in conducting actual hostile operations; and that, while receiving that training, they were not subjected to the hazards of war. There would be no reason for such persons to assume that by so enlisting they rendered themselves liable to pay extra premiums on life insurance policies of this sort, or, failing to do so, to lose the benefit of their insurance."

From a reading and careful consideration of that clause in the policy in the instant case, which insures "against death occurring in any part of the world, * * * or from any cause, except military or naval service in time of war," etc., it will be seen that there is a distinctive difference between a provision forfeiting the policy or reducing its amount by mere entrance into military or naval service and cases where the policy

contains a clause like the one under discussion. This will dispose of that provision of the policy, which is most controlling and paramount, and leave for consideration the extent, meaning and effect of subdivision 3.

That part of subdivision 3, of section 1, which will now be considered, is as follows: "This policy shall be incontestible after one year from date of issue except for nonpayment of premiums, or for military or naval service in time of war, during the premium-paying period, which military or naval service requires the written consent of the president and the payment of an extra premium, not to exceed 3 per cent. of the face of the policy; otherwise, without such consent, the amount payable thereunder shall be such a sum as the premiums paid would have purchased on the basis of the increased premiums, which sum shall not be less than the full reserve for the policy. This policy and the application therefor, a copy of which is hereto attached, constitute the entire contract between the parties hereto."

The military clause contained in the above subdivision 3 should be construed as a part of, and not in conflict with, the provision found in bold-faced type at the top of page 3 of the policy, which we have just discussed and given full consideration to, and which insures against death occurring from any cause except military or naval service in time of war, and its meaning must be subordinated to the plain interpretation of such main and controlling obligation of insurance liability. The military clause and subdivision 3 can hardly be construed as a prohibition against military service without the permission of the company, as it would seem applicable only to cases where death occurred caused by military service. The court must give some effect to the alternative provision contained therein, which reads: "Otherwise, without such consent, the amount payable thereunder shall be such a sum as the premiums paid would have purchased on the basis of the increased premiums," etc.

There was no express written consent of the company

given or indorsed upon the policy, nor was there any extra premium demanded or paid. Increased premiums were neither paid nor fixed so far as the insured had any personal knowledge or information. The policy provides that the premium shall not exceed 3 per cent. of the face of the policy; but, as there was no extra premium fixed in the policy and no application made, there would seem to be nothing for the insured to pay. The facts are, so far as the personal knowledge of the insured was concerned, that it was not fixed at all, and it would seem that, until it was definitely fixed and indorsed on the policy or the application of the insured, there could be no basis of calculation. To say that the premium shall not exceed 3 per cent. of the face of the policy does not fix it at 3 per cent. although this is the contention of appellant, when taken in connection with the allegation in the answer that it had been fixed by defendant company about two years before; so we must conclude that, so far as this policy is concerned, the liability of defendant company would not be lessened, even under the language of said subdivision 3 of the policy, as interpreted by appellant.

The appellant company has said that the policy and the application therefor, a copy of which is attached thereto, shall constitute the entire contract between the parties; so it would seem that whatever may have been done two years previous or what it might do after the issuance of said policy, but not mentioned therein, in regard to the fixing of the extra premium, without the knowledge or consent of the insured, would not bind either defendant or the insured, but would have no effect whatever. It is not alleged, as before stated, that any notice of this prior action of the board was given personally either to the insured or to the beneficiary, and in any event it is no part of the contract by the express terms of the policy itself contained in the latter part of subdivision 3 which we have quoted. It could only be

made a part of such policy by recital therein or by indorsement thereon.

Another phase of the statement of facts contained in the pleadings was discussed in the briefs and in the argument on the hearing of the case. That is as to the agency of C. E. Lowry. It is very persuasively contended by appellee that under the insurance code Lowry was the agent of the defendant company, so that any knowledge coming to him, while endeavoring to secure the payment of the premium or the change of the policy, would be within the scope of his employment. Lowry took the money for the second premium and turned it over to the company. He appeared to have had ostensible authority. He caused the indorsement to be made by procuring the officers, authorized so to do, to change the form of the policy from a "twenty payment life" to a "term policy." Section 3172, Rev. St. 1913, provides that, where a person performs acts of this character, he shall be deemed, to all intents and purposes, an agent of such company. The answer, however, says that Lowry was only a special agent of the company at the time of the payment and change of form of the policy, and invested with limited powers; that his chief duties were the soliciting of applications and assisting agents in the field to write business; and that therefore the payment made to him was not binding upon the company. The policy provides in regard to this change in the form and plan as follows: "After the first anniversary * * * of this policy the insured has the privilege of converting this policy to the term rate plan. This policy must be returned to the home office of the company, for proper indorsement of conversion, and all indebtedness against the policy paid in full." The answer does not state what other powers Agent Lowry had than to solicit applications and assist in writing business. It is merely denied that he had authority to take renewals; but it must be noted that it alleges also that he had authority to solicit new business, and, as the policy

would have expired by its limitations unless a new premium was paid, this might well be considered as soliciting new business, and as giving him authority to take the application for change of plan and to continue the term insurance for another year; and, if this is so, then any knowledge coming to him while endeavoring to secure the payment of such premium or change of the policy would be within the scope of his employment and would charge the defendant company with knowledge. If, as such agent he knew insured was in the military service, it is immaterial whether the officers of the company were formally notified of that fact or not. If this reasoning is correct, then the notice to and knowledge of Agent Lowry was notice to and knowledge of the defendant, and it became the duty of the company to notify the insured of any additional premiums it required, and if it did not do so, as such premium was for its benefit, it must be assumed that it was waived. It can hardly be contended that notice to the agent under these circumstances was not notice to the principal, and, when defendant company made the indorsement and changed the form of the policy, it had full knowledge of all these facts known to the agent, and, if anything additional was to be paid under the military service clause, it was the duty of the company to advise the insured, and its failure to do so would certainly constitute a waiver. It is not claimed, as before stated, that the insured had any personal knowledge, notice or information of any kind at any time of the act of the directors of defendant company in fixing a flat rate of 3 per cent. of the face of the policy for military service two years prior to the issuance of this policy, and the failure of the company to recite the flat rate of 3 per cent. in the policy would seem also to constitute a waiver.

In *Metropolitan Life Ins. Co. v. Willis*, 37 Ind. App. 48, the insured was insane and answered the questions in the application falsely; after the policy was issued, he was sent to the insane hospital. The agent went to

the wife to collect the premium; she asked him whether she should pay the premiums under the conditions, and, in substance, she was told to do so. The opinion on that part of the case is as follows: "Under these conditions appellant accepted nearly one hundred weekly payments. To avoid the force of these facts, appellant's counsel asserts that the agent who made the collections, with knowledge of the facts, could not bind the company, and hence no waiver is shown. * * * It being within the scope of his agency to collect premiums, it must be held that his knowledge was the knowledge of his principal, and hence, when he collected premiums, and paid them to appellant, with knowledge of the facts, such knowledge must be imputed to it."

Agent Lowry had actual knowledge of the military status of the insured when he transmitted the premium and policy to secure the indorsement which the defendant company and its officers subsequently made. Defendant had the right to fix an additional premium; but, until it did so and informed the other interested party of its action, both insured and beneficiary had the right to believe that the company relinquished any right thereto, especially when the policy was indorsed and delivered and the form changed, and the more so as the policy itself required all indebtedness to be paid to the company before any change in the form of the insurance could be had. If there had been any indebtedness at the time of such change in the form of the insurance because of an additional or military service premium, it was certainly the duty of the company, which had knowledge of such fact through its agent Lowry, to assert it before changing the form of the policy and returning it with receipt of full payment to the insured, and its failure to do so would seem to be a clear and unequivocal waiver.

Again, if the provision in regard to military service in time of war, as contained in subdivision 3, is of doubtful meaning and not in full harmony with the express provision contained in large type on page 2 of the policy

insuring against death, then it would seem, under the opinions in the well-considered adjudicated cases, that this doubt or conflict, if any, should be construed most strongly against the company, that forfeitures are not favored, and that before the defendant company can escape liability it must show that the liability claimed is by the terms of its contract specifically exempted. See *Springfield F. & M. Ins. Co v. McLimans & Coyle*, 28 Neb. 846; *Phenix Ins. Co. v. Holcombe*, 57 Neb. 622; *Hilmer v. Western Travelers Accident Ass'n*, 86 Neb. 285.

In *Springfield F. & M. Ins. Co. v. McLimans & Coyle*, *supra*, this court in its opinion said: "A policy of insurance is to be so construed, if possible, as to carry into effect the purpose for which the premium was paid and it was issued." If the contention of appellant is allowed, it means a reduction of the policy about two-thirds in amount; in other words, it means a forfeiture without assuming any additional hazard of a large portion of the rights of the beneficiary. The clause that the policy and the application shall constitute the entire contract between the parties was made in language chosen by the defendant company, and if there is any doubt or question as to the meaning of subdivision 3, when considered in connection with the material and governing provision as to insurance against death found on page 2 of the policy, it must be construed in favor of the insured, to carry out the purpose for which the policy was issued. As the application and the policy constitute the entire contract, such increased premium clause would certainly be not effective until notice and demand were made, and the pleadings show that no demand was made and no notice ever given. Again, as the increased premium was not fixed or determined, so far as this contract is concerned, there can be no basis of computation. The contract of insurance simply says that it shall not exceed 3 per cent. of the face of the policy. This is simply fix-

ing the maximum but no determination of the exact amount.

In *Woodmen Accident Ass'n v. Pratt,* 62 Neb. 673, the following language is used: "This court has frequently said that forfeiture clauses in contracts of the kind under consideration are not to be enforced literally except such construction be found necessary to conform to the obvious intention of the parties." By considering this rule with the terms of the policy and the application therefor in the instant case, which are the contract, the provision for an increased premium of not exceeding 3 per cent. of the face of the policy on the basis and computation prescribed by its terms is uncertain and indefinite, and surely not sufficient to avoid two-thirds of the amount of the insurance provided for in the policy.

There can be no question as to what weight should be given, under the authority of the best adjudicated cases, to the plain and obvious meaning of the provision in the policy, that the person was insured and intended to be insured against death, except death caused by military service in time of war, that is, a death that was incident to, caused by or especially connected with such military service, not against death which would come to a person in civil life, and not arising from any risks, dangers or hazards of war. It was a death caused by the acknowledged and well-known dangers inherent in military service in time of war that was intended to be guarded against. The insured, however, died from the same disease which attacks civilians, as well as soldiers and sailors, and which does not belong to war more than peace. We are deeply impressed with the idea that the obvious meaning of subdivision 3 is that, if the insurance was to be had against death from the diseases, accidents, exposures and dangers of military service in time of war, special application should be made therefor and increased premiums paid, and that the policy cannot be construed as meaning that, because a person enters the military or naval service in time of war, he will be required to pay an

additional premium and make a special application to be insured against the ordinary diseases, exposures and accidents of civil life.

From a consideration of the statements of fact in the pleadings and of the law applicable thereto, and after viewing the case from every angle, we are constrained to hold that the act of the court in rendering a judgment notwithstanding the verdict of the jury was justified by the pleadings, and that its judgment should be affirmed, including an additional attorney's fee of $200, to be taxed for the appeal.

AFFIRMED.