CLARA O. HOWIE, APPELLANT, v. COSMOPOLITAN OLD LINE LIFE INSURANCE COMPANY, APPELLEE.

272 N. W. 207

FILED MARCH 19, 1937. No. 29889.

*Ginsburg & Ginsburg,* for appellant.

*Perry, Van Pelt & Marti, contra.*

Heard before GOSS, C. J., ROSE, GOOD, DAY, PAINE and CARTER, JJ.

GOSS, C. J.

Plaintiff appeals from an order entering judgment for defendant on the pleadings and dismissing the action.

The case was evidently tried first in the municipal court because the pleadings are devised for that court and a stipulation in the transcript provides that the petition and answer in the municipal court shall constitute those pleadings in the district court.

The petition alleges that defendant was incorporated as Cosmopolitan Thrift Association at the time plaintiff purchased and received the certificate of membership on which her suit was based; thereafter by amendment it changed its name to Cosmopolitan Old Line Life Insurance Company; on October 29, 1926, plaintiff purchased and received a certificate of membership for two units and paid the monthly premiums thereon from that date to and including July 29, 1931; on each unit she was required to deposit or pay one dollar each month or three dollars each quarter in advance; if she failed to pay this amount when due, the contract allowed thirty days of grace from the date the payment came due, but provided that, if she failed to make the payments prior to the expiration of the thirty-day grace period, the certificate should automatically lapse. There was

a reinstatement provision, but nothing is claimed under it. The table of values provided that at the fifth year, if the certificate was in good standing, and before the expiration of the grace period, the owner of the certificate might withdraw $39.70 for each unit, and so she sued for $79.40.

The petition further alleged that plaintiff had paid monthly premiums on her policy and certificate from October 29, 1926, to and including July 29, 1931; that thereby plaintiff became entitled to the cash value shown in the certificate for the fifth year in the sum of $79.40, which had been demanded and refused.

The petition purported to attach as an exhibit the whole certificate, but some of its provisions were omitted. However, the amended petition supplies that lack by attaching the entire contract.

The amended answer also attaches as an exhibit the purported full copy of plaintiff's certificate with all of its provisions; alleges that paragraph 6 of the contract or certificate, in providing for the cash or loan value of $79.40 at the end of the fifth year of plaintiff's certificate, gives that amount while the certificate is in good standing, but the value does not apply in the event the certificate is not in good standing and after the expiration of the grace period as provided in the certificate, quoting and pleading sections 7 and 8 of the certificate as follows:

"7. In case the member fails to make his regular payments as prescribed on the face of this certificate, and in advance, he shall have thirty days' grace from the date the payment became due, during which period this certificate shall remain in good standing. If the insured die during the grace period, the unpaid amounts completing the current year's payments shall be deducted from any settlement under this contract.

"8. If the member fails to make the payments prior to the expiration of the thirty-day grace period, this certificate shall automatically lapse; provided, that in case the lapsed member desires to reinstate this certificate he may do so within two years from the date the last payment became

due by paying an amount equal to all omitted payments plus six per cent. compound annual interest thereon."

.The amended answer further alleges failure to pay any premiums after July 29, 1931 (which we have already derived from the petition), alleges failure to reinstate during the two-year period allowed for that purpose, alleges that the certificate has lapsed and plaintiff has no right of action thereon.

Plaintiff's reply is a general denial.

It is a well-established rule in this jurisdiction that forfeitures of insurance policies are not favored, that a forfeiture clause in such a contract will not be aided or given effect by construction in a case where the plain meaning of the language used does not require it, that contracts of insurance will be most strongly construed against the insurance company by which they have been drafted, and that, where a policy contains provisions making it susceptible of different constructions, one of which will work a forfeiture, and the other will not, that construction should be adopted which will prevent the forfeiture. *Haas v. Mutual Life Ins. Co.*, 84 Neb. 682, 121 N. W. 996; *Arendt v. North American Life Ins. Co.*, 107 Neb. 716, 187 N. W. 65; *Coad v. London Assurance Corporation*, 119 Neb. 188, 227 N. W. 925.

"But the rule is equally well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense." 14 R. C. L. 926, sec. 103.

The entire contract between the parties should be considered and interpreted. It is not like the ordinary old line insurance policy where, by regular payments through a long course of years, the insured is building up a reserve and surplus in which he has a continued property right for a considerable time, but, as the original name under which this policy was written indicates, it was called a thrift policy, wherein the investor engaged to make his

payments promptly for a definite number of years and the contract contemplated and provided that, if he so continued to make his payments, he would profit by the lapses of others. He himself, like all others, had thirty days of grace and if the current premium was paid within that time the contract was kept in force. There was no fund provided by his payment and by the payment of others to make good for his lapse and to keep the policy in force. Under paragraph 8 of the contract, which we have quoted, he had for two years a method of reinstatement even if he failed to pay the premium within the thirty days of grace after it was due.

While in some respects it may seem harsh, it is in no way illegal or against public policy. It seems very evident that the contract sued upon is one in which the holder expected and had contracted to profit by the lapsations of the contracts of others who would be unable to complete their contracts to their maturities.

"An insurance policy is a contract and, if couched in unambiguous and clear language, should be construed as other contracts." *Omar Baking Co. v. Employers Liability Assurance Corporation*, 130 Neb. 365, 264 N. W. 873. See, also, *Williams v. Union Central Life Ins. Co.*, 291 U. S. 170, 78 L. Ed. 711, 92 A. L. R. 693.

"Where there is no uncertainty as to the meaning of an insurance contract, and the same is legal and not against public policy, it will be enforced as made." *Rye·v. New York Life Ins. Co.*, 88 Neb. 707, 130 N. W. 434.

"A condition in a policy of life insurance, that if the stipulated premium shall not be paid on or before a certain day the policy shall cease and determine, is of the very essence and substance of the contract. Against a forfeiture caused by failure so to pay, a court of equity cannot relieve." *Klein v. Insurance Co.*, 104 U. S. 88, 26 L. Ed. 662. It is not necessary to use the term "forfeiture" in the policy. In the case just cited the expression was "cease and determine."

In the case before us the provisions are clear. There is

no reserve value on the policy; there is only a cash value and that is dependent upon the policy being kept in force. It was permitted to lapse and was never reinstated. Plaintiff asks a cash value in direct opposition to the terms of the policy.

The judgment of the district court is

AFFIRMED.