STATE, EX REL. CHARLES SMRHA, V. COSMOPOLITAN OLD LINE LIFE INSURANCE COMPANY: HERMAN F. GARTNER, INTERVENER, APPELLANT: GEORGE J. WAGNER, INTERVENER, APPELLEE.

287 N. W. 654

FILED SEPTEMBER 29, 1939. No. 30626.

*Frank A. Peterson,* for appellant.

*John S. Logan, Perry, Van Pelt & Marti, C. J. Campbell* and *Max Kier, contra.*

Heard before ROSE, PAINE, CARTER, MESSMORE and JOHNSEN, JJ., and LIGHTNER and LANDIS, District Judges.

PAINE, J.

This is an action in equity, by which Herman F. Gartner, who held a lapsed certificate, seeks to have the same reinstated in the Cosmopolitan Old Line Life Insurance Company. Trial was had to two district judges. It was held

that Gartner, and all those certificate-holders similarly situated, had failed to reinstate as provided by the terms of the certificate itself, and that his petition was without equity, and should be dismissed. Motion for new trial overruled. Gartner appeals.

On December 12, 1936, the district court ordered the Department of Insurance of the state of Nebraska to take possession of the Cosmopolitan Old Line Life Insurance Company, and to conduct its business until further order of the court. On February 15, 1938, the district court ordered said department to proceed to liquidate the assets of said company. The court further authorized said department to enter into a reinsurance contract with the Lincoln Liberty Life Insurance Company, which contract became effective March 30, 1938, and the next day all records and effects, except $10,000 reserved for legal expenses, were turned over to the Lincoln Liberty Life Insurance Company.

From 1926 to 1929 its business had been conducted under the name of Cosmopolitan Thrift Association. During the years of its existence, from 1926 to December 12, 1936, it had issued large numbers of thrift certificates, upon which $1 per month per unit was to be paid in regularly over a ten-year period.

Said certificates provided that, if payments were not made, the holder should have 30 days' grace, but if he failed to pay within said grace period, the certificate automatically lapsed, but gave the holder two years from the date of the last payment to reinstate the same by paying all over-due payments, with 6 per cent. interest. At the end of said two-year period, the holder of such certificate lost all rights thereunder.

Large numbers of certificate-holders claim they failed to reinstate their certificates, after the Department of Insurance took over said company, because they were unable to procure the cash surrender value of any of their certificates, or to procure the loan value thereof, and therefore lost these valuable rights through no fault of their own. Such certificate-holders demanded the right within a reasonable

time to reinstate such lapsed certificates by payments of all premiums thereon, with interest.

The Lincoln Liberty Life Insurance Company, having succeeded to the rights and position of the Cosmopolitan Old Line Life Insurance Company, filed an application with the district court for Lancaster county on April 19, 1938, asking that the court consider the rights of certificate-holders, and to make specific findings, and determine whether such certificate-holders should have the right and privilege to reinstate their certificates and, if so, upon what terms and conditions.

On April 30, 1938, Herman F. Gartner, appellant herein, filed his petition of intervention, which set out all of the facts at length in reference to said matter. He further alleges in substance that on December 12, 1932, the Cosmopolitan Old Line Life Insurance Company issued to him its thrift certificate for 12 thrift units, providing for a payment of $120 on each unit, in instalments over a period of 10 years; that he made payments for two years and eight months, up until August 12, 1935, in the total sum of $384, and that, under the strict terms of his certificate, he forfeited all that he had paid and all rights under said certificate on August 12, 1937. As a justification for his failure to make any further payments subsequent to August 12, 1935, intervener sets out the taking over of said company, and the order of liquidation, and the contract for re-insurance, all as hereinbefore set out. He alleged that he could not borrow on said certificates, nor could he, or others in the same position, obtain the cash surrender values thereof, and the company utterly failed to carry out its obligations under its certificates, and conditions were such as to create great uncertainty and confusion as to the legal right and status of the certificate-holders; that the failure of intervener to make his payments was due not to his fault, but to circumstances over which he had no control. The petition was brought on behalf of the intervener and others similarly situated.

The prayer of the intervener, Dr. Gartner, was for the

court to find that such certificate-holders had not forfeited their rights under said certificates; that the court grant a reinstatement period equal to the time that was left to them for reinstatement subsequent to December 12, 1936, the date the said company was taken over by the Department of Insurance, or such other reasonable period as may be just and equitable, during which period they shall have full rights of loan and cash surrender values.

Dr. George J. Wagner, the appellee herein, intervened and filed an answer, in which he alleged that on April 31 (30), 1932, there was issued to him a thrift certificate of five units; that his certificate and the certificate of intervener Gartner, and all others similarly situated, provided in paragraph 5 thereof that the company agreed to pay to the holder at the terminal age of the certificate a proportional share of money left in the fund by reason of lapsation of other holders of said certificates, together with interest accumulations; that said provision created a contractual obligation with each and every certificate-holder, and is for the benefit of such members as shall keep their certificates in full force and effect and prevent their lapsation; that having made all payments of premiums and kept his certificate in full force and effect, he is entitled to participate, along with others who have kept their certificates in good standing, in the money left by the lapsation of the certificates of the intervener Gartner and others; that said intervener Gartner has failed to set out any legal or equitable reason or excuse to pay premiums on his certificate and for his failure to keep said certificate in force and effect; wherefore, the intervener Wagner asked that the petition of intervener Gartner be dismissed, and relief thereunder be denied.

The Department of Insurance filed its answer, alleging that it was authorized by the court and did receive all payments made by certificate-holders, and receipt therefor, and examined, adjusted, and paid all proper claims for death benefits and annuities.

The evidence in the bill of exceptions discloses that there were 1,876 certificates, representing 6,709 units, upon which

the two-year period of reinstatement expired and they had lapsed; also that, as of December 31, 1937, there were 7,824 certificates in force and effect, representing 40,708 units outstanding.

No new business was written while the company was in the hands of the Department of Insurance, nor were any loans made to certificate-holders, but applications for loans were received and filed. The cash value of intervener Gartner's certificate was $103.58 just before his two-year reinstatement period expired on August 11, 1937.

However, Dr. Gartner could not have made any application for a loan for the reason that his contract was not in full force and effect, so it had no loan value until it was reinstated. At the time the company was taken over by the Department of Insurance, Dr. Gartner's contract was delinquent, but he made three payments as of December 12, 1936, which paid his contract up to August 12, 1935. At any time for two years from that date he could have paid up his back payments, with 6 per cent. interest, and been reinstated.

Otto Gross testified that the intervener, Dr. Gartner, never made any application for a loan while it was being run by the Department of Insurance.

As to the legal questions involved, we find that the same form of contract involved in the case at bar was before this court in *Howie v. Cosmopolitan Old Line Life Ins. Co.*, 132 Neb. 367, 272 N. W. 207. It was held there that forfeitures are not favored, and will be enforced only when the contract requires. The careful discussion in the text of that opinion is in point in the case at bar. This court said in that case, in discussing this same kind of certificate: "It is not like the ordinary old line insurance policy where, by regular payments through a long course of years, the insured is building up a reserve and surplus in which he has a continued property right for a considerable time, but, as the original name under which this policy was written indicates, it was called a thrift policy, wherein the investor engaged to make his payments promptly for a definite num-

ber of years and the contract contemplated and provided that, if he so continued to make his payments, he would profit by the lapses of others. He himself, like all others, had thirty days of grace and if the current premium was paid within that time the contract was kept in force. * * * While in some respects it may seem harsh, it is in no way illegal or against public policy. It seems very evident that the contract sued upon is one in which the holder expected and had contracted to profit by the lapsations of the contracts of others who would be unable to complete their contracts to their maturities."

In this case we held that, if the certificate-holder allowed his certificate to lapse, he was not entitled to recover the cash values until he reinstated the policy.

The appellant in his argument called attention to his reply brief, in which he cites the case of *People v. Empire Mutual Life Ins. Co.*, 92 N. Y. 105, where the following rule is laid down in the syllabus: "One holding a policy of life insurance does not forfeit his policy by omitting to pay annual premiums thereon after the company issuing the policy has ceased to do business, transferred all of its assets and become insolvent."

In *Jensen v. Grand Lodge, A. O. U. W.*, 106 Neb. 66, 182 N. W. 599, this court said that the laws of the benefit association provided for automatic suspension without notice. He made his last payment in May and died in September. There was nothing to distinguish his attitude from that of a member who had made up his mind to drop his insurance. Evidence was held to establish that insured abandoned his insurance and his rights as a member.

The decree entered in this case by the trial judges set out that the failure of the Department of Insurance to make loans, or to pay the cash surrender values, did not prevent the period of reinstatement of two years from running; that the intervener Gartner and all other certificate-holders similarly situated who permitted said period to expire, without exercising their rights, lost all their rights thereunder, and finds that the petition of intervener is without

equity, and should be dismissed. Finding no prejudicial error in the record, the decree of the trial court is hereby

AFFIRMED.

JOHNSEN, J., dissenting.

The effect of the majority opinion, as I view it, is to permit a life insurance company to escape the provisions of the statutes and the rules of construction applicable to insurance contracts generally, by entangling other activities and obligations in its contracts. That to me is unsound as a matter both of legal principle and public policy. An insurance company should no more be able to dodge the insurance laws of the state, by wrapping its life insurance obligations in "thrift certificates" or savings contracts, than a liquor dealer to escape the liquor laws, by burying and distributing his products in bags of beet sugar.

The first page of Gartner's certificate binds the company, "for and in consideration of the warranties * * * in the application * * * and of the * * * premium specified in the margin," to pay his wife as beneficiary, upon satisfactory proof of death while the certificate is in effect, "twelve times the amount shown by column four (4) of the table of values herein to be insured on the date of * * * death." There is attached to the certificate a copy of an application executed by Gartner, which sets forth his age, place of birth, occupation, nationality, sex, marital status, and beneficiary designation, and which contains the following condition: "I agree that the certificate issued hereon shall not take effect until the first payment has been received by the company during my good health."

That this definitely constitutes a life insurance contract, there can be no possible doubt. The fact that a thrift or savings scheme is incorporated in the instrument does not alter its status as a life insurance obligation or exempt it from amenableness to the insurance laws of the state. My concept is that a life insurance company's business is to write life insurance. The statute (Comp. St. 1929, sec. 44-401) specifically defines life insurance as insurance upon or pertaining to the lives of persons, including endowments

and annuities, and disability benefits. Nothing else, except convenient and appropriate incidents and provisions in connection with such business, can be regarded as falling within its field. I do not recognize the right of a company to subvert its activities into other fields, nor its ability to escape the dictates of the insurance statutes by hybridizing its contracts.

I shall not here attempt to discuss whether the thrift or savings business is such a reasonable incident of the life insurance business that a company ought to be permitted to engage in it and to include provisions therefor in its insurance contracts. Assuming that it is, it is clear to my mind that, as a matter of public policy, the contract into which such a scheme is integrated must still conform to the requirements of the laws applicable to life insurance contracts.

Section 44-602, Comp. St. 1929, requires that every policy of life insurance ("except policies of industrial insurance or where the premiums are payable monthly or oftener") shall contain among other things, provisions for nonforfeitable loan and surrender values and for extended insurance. Subdivision 11 of such section requires a provision in the policy "that if, in event of default in premium payments, the value of the policy shall be applied to the purchase of other insurance, and if such insurance shall be in force and the original policy shall not have been surrendered to the company and canceled, the policy may be reinstated within three years from such default, upon evidence of insurability satisfactory to the company and payment of arrears of premiums with interest."

Gartner's certificate sets up a table of cash or loan values, but, if any premium is not paid within thirty days after it is due, these rights are automatically forfeited. The only privilege of reinstatement is for a period of two years from the default, by paying an amount equal to all overdue payments plus 6 per cent. compound annual interest thereon. There is no provision in the contract for extended insurance.

Gartner paid his premiums to August 12, 1935. According to the table of values in the certificate, the cash or loan

value of his contract was at that time approximately $325. This money was derived from premiums which the company had collected under a life insurance contract. The contract made no attempt to apportion the premium between its insurance obligation and its thrift feature. Gartner paid a single premium under the contract for its integrated benefits. The insurance obligation, by the very language of the contract, was predicated upon the consideration of payment of the entire premium. The fund which these premium payments created was liable for all of the company's obligations,—death losses, surrender values and thrift terminal settlements.

In this situation, whatever right, if any, the company had to disintegrate and separate the thrift benefits and the insurance provisions of the contract, and to set up different standards and scopes of contract obligation and allocate premium charges for each, it is clear that, not having done so, the insurance obligation impregnated the entire contract and left it subject to the conditions which the statute imposed upon such contracts. More specifically, when the company attempted to set up policy rights and benefits out of the premiums which it had collected on its integrated obligation, the terms and conditions of such rights and benefits had to be in accord with the provisions of section 44-602, Comp. St. 1929. Thus, for example, it could not set up loan and surrender values, derived from such premiums, which were subject to forfeiture. So, too, it was required to make any cash value, which the policy might have, convertible into extended insurance.

The majority opinion, as well as the previous case of *Howie v. Cosmopolitan Old Line Life Ins. Co.*, 132 Neb. 367, 272 N. W. 207, which it follows, seem to me to have fallen into the error of making the tail wag the dog. To me, the thrift feature of Gartner's contract, as I have already indicated, could never become more than a subordinate incident in the conduct of the company's life insurance business, and the insurance obligation, therefore, necessarily dominated any contract into which the two had been inseparably fused.

Such obviously must have been the intent of the legislature when it provided, in section 44-101, Comp. St. 1929, that the insurance business "is public in character, and requires that all those having to do with it shall at all times be actuated by good faith in everything pertaining thereto; shall abstain from deceptive or misleading practices, and shall keep, observe and practice the principles of law and equity in all matters pertaining to such business."

Perhaps the court was somewhat confused in the *Howie* case by the fact that the insurance involved was term insurance. Gartner's contract too was a term policy for ten years. But, even as to policies of term insurance, section 44-602, Comp. St. 1929, provides for the setting up of the benefits and conditions therein prescribed which are applicable to such a contract. Under the statute, in such a policy, the provisions may be made "more favorable to the policyholder than hereinbefore required," but they cannot, in any event, be set up with limitations or conditions not in conformity with the statutory requirements. Thus,—to repeat, —loan and surrender values cannot be set up with a forfeiture provision. So, too, any cash value which a policy may have must be permitted to be used for extended insurance, "and if such insurance shall be in force and the original policy shall not have been surrendered to the company and canceled, the policy may be reinstated within three years from such default, upon evidence of insurability satisfactory to the company and payment of arrears of premiums with interest." These requirements governed the duty and obligation of the company, even though the provisions of the policy did not comply with them. Comp. St. 1929, sec. 44-608.

As I view it, therefore, Gartner was entitled to have any cash value which the company had created, as of August 12, 1935, out of the premiums of his contract, applied to the purchase of other insurance, in the amount then in force under the policy. I do not know what the cost of such insurance would have been, but it probably is a reasonable assumption that $325 would more than have paid the

premium to April 30, 1938, when Gartner sought to compel the company's assignee to permit reinstatement of the original contract. If I am right in assuming that the surrender value would have purchased extended insurance to April 30, 1938, then, since three years had not elapsed from the date of default and the certificate had not been surrendered to the company, Gartner was entitled, under section 44-602, Comp. St. 1929, to have his original contract reinstated "upon evidence of insurability satisfactory to the company and payment of arrears of premiums with interest." If the surrender value would not have purchased extended insurance to April 30, 1938, or if Gartner was no longer an insurable risk, the company should, of course, have the opportunity to show these facts.

The reinstatement of the original certificate necessarily would include both the insurance and thrift benefit rights, because of their contract integration.

For the reasons stated, I respectfully dissent from the opinion of the majority.

CARTER, J., concurs in the foregoing dissent.