# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3962

_____

Jon B. Roeder,                                    *
                                                  *
    Plaintiff - Appellant,                    *
                                                  *  Appeal from the United States
v.                                                *  District Court for the
                                                  *  District of Nebraska.
Metropolitan Insurance and Annuity                *
Company,                                          *
                                                  *
    Defendant - Appellee.                     *

_____

Submitted:  October 18, 2000

Filed:  January 8, 2001

_____

Before BOWMAN, LOKEN, and HANSEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

      This is an action to recover the proceeds of a life insurance policy issued to Norman E. Roeder, a Nebraska resident. Although the policy lapsed for nonpayment of premiums before Roeder died, his son, the policy beneficiary, asserts a right to recover the proceeds because the insurer, Metropolitan Insurance & Annuity Company, failed to provide a lapse notice required by the policy and the Nebraska insurance regulations. Metropolitan moved for summary judgment, conceding for purposes of its motion that it failed to give the required notice. The district court granted summary

judgment, concluding that Roeder's failure to pay any premium for 245 days after the policy lapsed was unreasonable as a matter of law. The beneficiary appeals. Concluding that the district court erred in failing to analyze this issue under the Nebraska law of equitable estoppel, we reverse and remand.

Roeder purchased the flexible premium policy in February 1984, when he was 57-years old. The policy provided $300,000 of term life insurance for an annual planned premium of $6,575, scheduled to be paid in semi-annual installments of $3,287.50 on February 7 and August 7 of each year. Metropolitan deposited each premium payment in an accumulation fund and withdrew the cost of insurance from that fund on a monthly basis. In the policy's early years, the planned premiums exceeded the cost of insurance. That excess, together with earned interest and the continuing semi-annual payments, were projected (but not guaranteed) to cover the rising cost of the term insurance until the policy expired when Roeder reached age 95. However, the policy was flexible -- Roeder could skip scheduled premium payments, change their frequency and amount, or withdraw from the accumulation fund, so long as the amount in that fund remained sufficient to keep the policy in force.

Because the accumulation fund's earnings were affected by interest rate changes, the policy warned Roeder that "the planned premium . . . may need to be increased to keep this policy and coverage in force." In addition, the policy provided that, if the accumulation fund became insufficient to pay the monthly cost of insurance --

> there will be a grace period of 61 days . . . to pay an amount that will cover the monthly deduction. We will send you a notice at the start of the grace period. . . . If we do not receive a sufficient amount by the end of the grace period, your policy will then end without value.

Roeder made the scheduled semi-annual premium payments from 1984 until 1993, when he withdrew $27,115 from the accumulation fund. This withdrawal

-2-

decreased both the face amount of the policy and the excess previously built up in the fund. Metropolitan's annual statement for the 1993-1994 policy year reported the precipitous drop in the accumulation fund and advised Roeder that continued payment of the scheduled premiums would only keep the policy in force until January 1997.

Roeder continued making the scheduled semi-annual payments in 1994, 1995, and 1996. In December 1996, Metropolitan sent him a regular billing statement advising that the next semi-annual payment was due on February 7, 1997. On January 7, 1997, Metropolitan sent a lapse notice advising Roeder that the accumulation fund was insufficient to pay that month's insurance charge, and he must pay $1,630.97 by March 16, 1997, to keep the policy in force. On January 21, Roeder made a regular semi-annual payment of $3,287.50. Shortly thereafter, Metropolitan sent him an annual statement for the 1996-1997 policy year. That statement reflected his January premium payment and advised:

> If you continue to pay premiums as scheduled, on the basis of current interest rates and cost of insurance charges, your coverage will remain in effect until December 1997.

> *    *    *    *    *

> If you make no further premium payments, on the basis of current interest rates and cost of insurance charges, your coverage will remain in effect until May 1997.

Because Roeder had already made the February 1997 scheduled payment, no further premium payments were "scheduled" until August 1997. Thus, the above-quoted reference to "further premium payments" is less than self-explanatory. A person familiar with this type of insurance could figure out the underlying problem from these annual statements -- Roeder was now 70 years old, the cost of the term insurance exceeded the scheduled premium payments, and his accumulation fund was too

depleted to make up the difference during the entire period covered by a semi-annual payment. But it would have been difficult if not impossible to discern from the annual statements alone just when the accumulation fund would become insufficient to pay the next monthly insurance deduction. Thus, the policy sensibly obligated Metropolitan to provide Roeder a 61-day grace period to pay any premium shortfall and a notice of when that period would begin.[1]

Roeder made no further premium payments. He died of lung cancer in January 1998. Following his death, the beneficiary filed a claim for the policy proceeds, $272,115. Metropolitan denied the claim on the ground that the policy had lapsed on July 14, 1997. Metropolitan's policy records include reproductions of a May 7, 1997, "lapse pending" letter advising Roeder that, to keep the policy in force, he must pay $1,742.16 by July 14, 1997, the end of a 61-day grace period; and a July 14, 1997, lapse notice advising Roeder that his coverage terminated that day for nonpayment of premium. The beneficiary asserts that Roeder never received these notices. Metropolitan did not send Roeder a regular billing statement for the August 1997 scheduled semi-annual payment because the policy lapsed on July 14.

In claiming a right to the policy proceeds, the beneficiary pleaded an estoppel theory. Metropolitan may not argue the policy lapsed or was cancelled, the beneficiary alleged, because Roeder's failure to pay any premiums due before his death was caused by Metropolitan's failure to send him (i) the May 1997 notice that additional premiums must be paid or the policy would terminate on July 14, and (ii) a regular billing statement for the August 1997 scheduled semi-annual payment. Metropolitan moved for summary judgment. Conceding for purposes of its motion that it failed to send Roeder a contractually required notice in May 1997, Metropolitan argued that the

---

[1]This policy provision complied with notice and grace-period requirements in the Nebraska insurance regulations. See NEB. ADMIN. CODE tit. 210, ch. 40, § 007.06.

policy was not thereby extended indefinitely; rather, it terminated as a matter of law prior to Roeder's death in January 1998.

Applying Nebraska law, the district court granted summary judgment in favor of Metropolitan, concluding that its failure to provide the required lapse notice extended the policy's coverage only for a reasonable time, and that the policy lapsed before Roeder's death because his failure to pay any premiums for 245 days following the lapse was unreasonable as a matter of law. We review the grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party. Summary judgment is appropriate if there is no material fact in dispute and the evidence would not allow a reasonable jury to return a verdict for the nonmoving party. See Derickson v. Fidelity Life Ins. Ass'n, 77 F.3d 263, 264 (8th Cir. 1996). We review the district court's interpretation and application of state law de novo. See Salve Regina Coll. v. Russell, 499 U.S. 225, 231 (1991).

Although Nebraska law does not favor the forfeiture of an insurance policy, "[a] condition in a policy of life insurance, that if the stipulated premium shall not be paid on or before a certain day the policy shall cease and determine, is of the very essence and substance of the contract. Against a forfeiture caused by failure so to pay, a court of equity cannot relieve." Howie v. Cosmopolitan Old Line Life Ins. Co., 272 N.W. 207, 209 (Neb. 1937), citing Klein v. Insurance Co., 104 U.S. 88, 90-91 (1881); accord St. Paul Mercury Ins. Co. v. Hurst, 301 N.W.2d 352, 355 (Neb. 1981). However, "[t]he burden of establishing an effective cancellation before a loss is on the insurer, and notice of cancellation must be in accord, and in substantial compliance, with the provisions of the policy relating thereto." Baker v. St. Paul Fire & Marine Ins. Co., 480 N.W.2d 192, 197 (Neb. 1992). "[A] provision for forfeiture for nonpayment of premiums is self-executing [unless] a notice of forfeiture [is required] by statute, by the terms of the contract, or by course of dealing." Tighe v. Security Nat. Life Ins. Co., 214 N.W.2d 622, 625 (Neb. 1974). The issue, then, is whether Metropolitan's failure

to provide the required May 1997 lapse notice relieved Roeder of his obligation to keep the policy in force by making additional premium payments prior to his death.

The Supreme Court of Nebraska addressed a very similar issue in <u>Pester v. American Family Mutual Insurance Co.</u>, 186 N.W.2d 711 (Neb. 1971). In <u>Pester</u>, an auto insurer failed to send its regular notice that a six-month premium was due. The insured failed to pay the premium, suffered an accident eight days later, and the insurer denied coverage because the policy had lapsed. In affirming judgment for the insured after a court trial, the Supreme Court of Nebraska first stated precisely what the trial court had decided:

> The court found that defendant was estopped to assert that the policy had lapsed and, in so doing, necessarily found that plaintiffs had not received the usual notice of premium due with reference to the one accruing on January 30, 1966; that plaintiffs relied and depended upon receipt of such notice; and that they could and would have paid the premium without defaulting had the notice been received.

186 N.W.2d at 713. After reviewing the facts as found by the trial court, the Supreme Court stated the six elements of equitable estoppel[2] and concluded the insured had established each of those elements. <u>See</u> 186 N.W.2d at 714-15.

In this case, without citing <u>Pester</u>, the district court relied primarily on a First Circuit case in concluding that Metropolitan's failure to give the required lapse notice extended the policy only for a reasonable period of time. <u>See</u> <u>Bezanson v.</u>

---

[2]As to the party estopped, (1) making a false representation, concealing material facts, or conveying the impression the facts are other than those the party subsequently asserts, (2) intending or expecting this conduct will influence the other party, and (3) knowledge of the true facts. As to the other party, (4) lack of knowledge and the means of knowledge of the true facts, (5) good faith reliance on the conduct or statements of the estopped party, and (6) a detrimental change of position.

Metropolitan Ins. & Annuity Co., 952 F.2d 1 (1st Cir. 1991), cert. denied, 505 U.S. 1205 (1992).  But the court in Bezanson, a bankruptcy case, looked to Maine law and did not analyze the issue under the doctrine of equitable estoppel.  Although Pester involved a liability insurance policy, rather than a life insurance policy, equitable estoppel is a doctrine of general application under Nebraska law.  Therefore, we conclude the Supreme Court of Nebraska would apply the elements of equitable estoppel as identified in Pester in deciding this case.

Without question, the length of time between Metropolitan's failure to give the required lapse notice, the lapse of the policy, and Roeder's death are relevant in applying estoppel factors (4) and (5) summarized in footnote 2 -- whether Roeder knew or had the means of knowing the policy was about to lapse, and his good faith reliance on the lack of notice.  But equitable estoppel turns on all the facts and circumstances of a particular case, not just a single factor such as whether 245 days is an unreasonably long period to extend the coverage of a life insurance policy.  See, e.g., Franksen v. Crossroads Joint Venture, 515 N.W.2d 794, 803 (Neb. 1994).  We agree with the district court that the Supreme Court of Nebraska would not extend a life insurance policy indefinitely because the insurer failed to give a required lapse notice.  Cf. Nederland Life Ins. Co. v. Meinert, 199 U.S. 171, 181 (1905) (a statutory notice requirement should not be construed so as to make it a "trap" for either the insurer or the insured).  But the doctrine of equitable estoppel avoids this harsh and unreasonable result by focusing on the insured's lack of knowledge, good faith reliance, and detrimental change of position.  Cf. Norwest Bank, N.A. v. Federal Kemper Life Ins. Co., 110 F. Supp. 2d 774, 783-84 (N.D. Ind. 2000) (discussing this issue in terms of promissory estoppel under Indiana law).

Under Nebraska law, the party asserting an estoppel, here the beneficiary, must prove each element by clear and convincing evidence.  See Double K, Inc. v. Scottsdale Ins. Co., 515 N.W.2d 416, 422 (Neb. 1994).  Though it is an equitable doctrine, estoppel is an issue of fact under Nebraska law, see Woodard v. City of

Lincoln, 588 N.W.2d 831, 836-37 (Neb. 1999), and where the underlying action is one traditionally at law, such as an action to recover insurance proceeds, estoppel issues may be submitted to a jury.  See Chadron Energy Corp. v. First Nat'l Bank of Omaha, 459 N.W.2d 718, 730, 736 (Neb. 1990); Lydick v. Gill, 77 N.W. 340 (Neb. 1898).  In this case, assuming Metropolitan did not send the May 1997 lapse notice, whether the beneficiary can establish an estoppel turns on issues such as what Roeder should have learned from the January 1997 lapse notice and the various annual statements, and whether Roeder could have reasonably relied on the absence of an August 1997 semi-annual billing statement in making no further premium payments or inquiries before he died in January 1998.  Although there are many Nebraska cases rejecting claims of equitable estoppel as a matter of law, in these circumstances we conclude the district court erred in granting summary judgment without expressly analyzing the disputed elements of equitable estoppel.

The judgment of the district court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.