No. 25,760.

Sisia Lofstead, *Appellee*, v. The Bank Savings Life Insurance Company, *Appellant*.

### SYLLABUS BY THE COURT.

Life Insurance—*Military Service Provision—Liability*. The proceedings considered, and *held*, the military-service provision of an insurance policy is not void for uncertainty, death of the insured was a result of engaging in military service in time of war, and the liability of the company is limited to cash surrender value of the policy at date of death, and interest.

Appeal from Trego district court; Jacob C. Ruppenthal, judge. Opinion filed March 7, 1925. Reversed.

*E. R. Sloan,* of Holton, for the appellant.

*J. G. Hutchinson,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was one to recover on a policy of insurance containing a military-service provision, issued to one who became a soldier in the world war, did not pay the extra premium, was wounded, and died before he was discharged. Plaintiff recovered the full amount of the policy, and defendant appeals.

The parties stipulated with reference to certain facts, some evidence was introduced at the trial, and the court returned the following findings of fact and conclusions of law:

#### "Findings.

"1. The action was begun 22 December, 1920, to recover the face, $1,000, of defendant's policy, number 7864, issued 28 June, 1916, on the life of Martin N. Lofstead, son of plaintiff. The premiums were regularly paid on said policy by the insured, to include that of 1919.

"2. Upon trial plaintiff recovered judgment for $46.98, the cash surrender value of the policy. Plaintiff appealed, and the supreme court reversed the judgment of the district court, and directed the trial court to proceed further. (*Lofstead v. Insurance Co.,* 110 Kan. 455.) A new trial was had in March, 1924. These findings are made therein.

"3. Martin N. Lofstead was inducted into the military service of the United States on 20 September, 1917, and was assigned to duty in France. On 29 September, 1918, fighting in the Argonne Forest, he was wounded, necessitating amputation of the left leg near the body. He was sent immediately to the hospital, removed early in 1919 to the United States, and admitted to Walter Reed General Hospital, Washington, D. C., 11th April, 1919, and remained there until his death on 1 July, 1919.

"4. It is agreed by the parties that the cause of his death was diphtheritic infection of the amputation stump, left hip; abscess post pleural right, and bronchopneumonia, acute, right lung; and peritonitis acute and general.

"5. No testimony, expert or other, has been offered to show causal relation, if any, between the three or four contributing causes named, or to show whether his death was induced primarily by diphtheritic infection, or by abscess (or pneumonia), or by peritonitis; nor whether probably no diphtheritic infection would have occurred had there been no amputation.

"6. The policy issued by defendant contained a clause that, 'If the insured at any time engaged in military or naval service in time of war (militia and national guard not in active service excepted), and ·death shall occur during such engagement or as a result thereof, the liability hereunder shall be limited to the cash surrender value of this policy at the date of death, unless the insured shall have obtained the company's consent and paid the extra premium therefor, at its established rate.'

"7. No consent was asked of the company by the insured, nor given by the company to the insured, to enter military service. No extra premium was paid or offered by the insured, nor was such demanded by the company, otherwise than by the bare letter of the contract in the policy.

"8. The policy provided further that it 'constitutes the entire contract between the parties hereto, and shall be incontestable after one year from date of issue, except for nonpayment of premiums and violations as to military and naval service.'

"9. The policy did not contain any statement of what the 'extra premium' amounted to, or would amount to, or how it should be definitely ascertained or computed, in the event of the insured's entering military service; nor what was then its 'established rate' for such greater hazard.

"10. The defendant at no time declared a forfeiture of the policy, nor attempted to do so.

"11. The cash surrender value of the policy at the death of the insured was forty-three dollars ($43).

"12. The insured 'engaged in military service in time of war,' September 20, 1917, and was not discharged therefrom to the date of his death. Practically, the war ceased with the armistice, 11 November, 1918, so far as the United States was concerned generally.

"13. The wound which required amputation of the left leg was a direct result of the insured's 'engagement in the military service.' The diphtheritic infection found lodgment in the stump and led to death. Without the war wound there would have been no such seat of infection. The abscess and pneumonia are consistent with long hospital conditions following the amputation, and the peritonitis consistent with an operation so near as the upper part of the left leg, or 'hip,' as the report of death shows.

"Conclusions.

"1. The policy was not forfeited, nor forfeitable, for engaging in the military service. (110 Kan. 455, syl., ¶ 1.)

"2. The entire clause providing extra premium to be paid in the event of insured's engaging in military service was void for uncertainty as to premiums

Lofstead v. Bank Savings Life Ins. Co.

to be paid in addition to the ordinary premium, and the policy was valid to hold the defendant for the full face value.

"3. The plaintiff should recover the full face value of $1,000, with six per cent per annum interest from 1 July, 1919."

This is a second appeal. At the first trial plaintiff was given judgment for the cash surrender value of the policy, $43, together with interest, making the total sum of $46.98. Plaintiff was not satisfied, and appealed. (*Lofstead v. Insurance Co.*, 110 Kan. 455, 204 Pac. 530.) The plaintiff, not the defendant, contended that the policy was forfeited by the assured by engaging in military service. The plaintiff then contended the hypothetical forfeiture was waived by the company by acceptance of premiums at the regular rate, as pleaded in the reply. The court held the military service provision of the policy did not provide for forfeiture, but provided merely for liability limited to cash surrender value. The court did not stop, however, with this adjudication. It had before it a demurrer to a reply to an answer, and it proceeded to determine the legal sufficiency and effect of the answer and of the reply. The decision was that the answer, which pleaded specially the military-service provision of the policy, and alleged nonconsent of the company and failure to pay extra premium, stated a full defense to plaintiff's cause of action, except the admitted cash surrender value of the policy. It was further decided that the facts pleaded in the reply as constituting waiver were not sufficient for the purpose. Because, however, the reply did not admit the truth of the facts stated in the answer, and was sufficient to put those facts in issue, it was held the demurrer to the reply should be overruled. As a consequence of the interpretation placed upon the military-service provision of the policy, the court said:

"The answer alleged facts which, if true, constituted a complete defense to all of the cause of action alleged in the petition, except $43 and the interest thereon."

Elsewhere in the opinion the court said:

"If, on the trial of this action it should develop that the allegations of the answer are true, the plaintiff cannot recover judgment for more than that for which judgment was rendered in this action." (*Lofstead v. Insurance Co.*, 110 Kan. 455, 457, 204 Pac. 530.)

The result is, the cause was remanded to the district court to determine the issue of fact raised by the general denial in the reply of the allegations of the answer, and to render judgment accord-

ingly. The district court has determined this issue of fact in favor of defendant, but has rendered judgment for plaintiff for the full amount of the policy, on the ground stated in the second conclusion of law. If plaintiff wanted a judgment on that ground it should have been presented in the first appeal. The court, however, will overlook for a moment the procedural bar to consideration of invalidity of the military-service provision of the policy, and will discuss the second conclusion of law.

The second conclusion of law is erroneous. There is no uncertainty in the military-service provision which affects its validity. The policy was issued before the United States entered the world war. It insured the life of Martin N. Lofstead for $1,000 for a stated annual premium. Insurance companies cannot afford to insure war risks at peace-time rates. Such a practice would discriminate unjustly against policyholders not engaging in military service, would be indefensible as a business policy, and ought not to be permitted on grounds of public policy. Therefore the policy sued on provided that if death occurred while the insured occupied a military status, or as a result of having occupied such a status, the company should not be liable for the face of the policy, but should be liable for the cash surrender value only of the policy at date of death. This value was ascertainable from a table of cash surrender values, indorsed on and made a part of the policy. This rule of liability governed unless the insured negotiated with the company to keep the amount of his policy at $1,000. To keep the amount of the policy at $1,000 the insured was obliged to obtain the company's written consent. The company was not obliged to consent, but if it did so the insured was required to pay an extra premium at the company's established rate. There is no rule of law which required this condition to be more explicit in order to validate reduction of liability to cash surrender value.

Plaintiff cites the case of *Arendt v. North American Life Ins. Co.*, 107 Neb. 716, as sustaining the second conclusion of law. In that case the policy was incontestable except for military service in time of war. The amount of the policy was $2,500. The insured could keep it from being cut down on account of military service by obtaining consent of the company and by paying the extra premium, the amount of which was not specified, but which would not exceed three per cent of the face of the policy. If consent were not obtained the amount of the policy was reduced to such a sum as

premiums actually paid would purchase on the basis of the increased premium. Problem: What was the amount contracted to be paid in the event of military service and nonconsent of the company? The contract furnished no solution, because a factor necessary in computing the amount—extra premium—was left indefinite. Because the face of the policy was not reducible by any definite method of computation to any definite sum, the court held it was not reduced at all. We have no such case here. In the policy sued on, the amount to be paid in case of engaging in military service is just as definitely and certainly fixed as the amount to be paid if the insured should not engage in military service— the cash surrender value of the policy, $43. Privilege to keep the policy at its face value notwithstanding engaging in military service was extended for the benefit of the insured. The company could attach what conditions it pleased in tendering the privilege. The conditions which were attached were accepted by the insured when he accepted the policy. He did not choose to exercise the privilege, and liability of the company was reduced to cash surrender value of the policy.

Plaintiff moved to set aside the thirteenth finding of fact as not sustained by the evidence and the agreed facts, and the motion was denied. Plaintiff by an express statement in her brief forbears to assign denial of the motion as error; but plaintiff argues the findings of fact do not warrant the inference that death resulted from engaging in military service in time of war. In considering the question, the thirteenth finding of fact may be ignored.

It was stipulated that the wound which the insured received in battle necessitated immediate amputation of the left· leg near the body. While there was no medical evidence that the insured died as a result of his wound, it was stipulated that he died of infection of the amputation stump, and it is a matter of common knowledge that such an infection may cause death. Plaintiff argues, however, that the infection, and not the wound, was proximate cause of death, and cites *Railway Co. v. Columbia*, 65 Kan. 390, 69 Pac. 338. In that case a high wind blew grain doors piled on a depot platform upon a railroad track. An engine was derailed and the engineer was killed. It was held the wind, and not the negligent piling of the grain doors on the platform, was proximate cause of the accident. The syllabus reads as follows:

"In a case where two distinct, successive causes, wholly unrelated in opera-

Lofstead v. Bank Savings Life Ins. Co.

tion, contribute toward the production of an accident resulting in injury and damage, one of such causes must be the proximate, and the other the remote, cause of the injury.

"A prior and remote cause cannot be made the basis of an action for the recovery of damages if such remote cause did nothing more than furnish the condition, or give rise to the occasion, by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated and efficient cause of the injury." (Syl. ¶¶ 1, 2.)

While a wound furnishes a condition making infection possible, infection is not something intervening, dissociated from and wholly unrelated in operation to the seat of infection, as a sudden gale is distinct from and unrelated to a pile of lumber. While infection is not so frequent since surgery became so nearly aseptic, morbific bacteria still lurk within and without the human body, find natural lodgment in wounds, and, if death result, the wound is the proximate and efficient cause.

The agreement respecting facts recited that the insured died of diphtheritic infection of the amputation stump at the left hip. Then follows enumeration of abscess, pneumonia and peritonitis. Well-informed persons know that the abscess, pneumonia and peritonitis may very well have been consequences of the infection as primary cause. The information may be left at one side, because not communicated to the court by medical experts. But whatever concurring causes may have contributed to death, the insured died of infection of the amputation stump at the left hip. The chain of causation ending in death is complete: engaging in military service in time of war, a wound received in battle, amputation of the wounded member, and infection of the stump; and the doctrine of efficient proximate cause is fully satisfied.

There is nothing else in the case of sufficient importance to require special mention.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment in favor of plaintiff and against defendant for the cash surrender value of the policy at date of death of the insured, with interest.