John T. Dempsey, Public Administrator, Administrator of Estate of Grace Perry, Deceased, Appellee, v. National Life and Accident Insurance Company, Appellant.

Gen. No. 44,631.

Feinberg, P. J., dissenting.

Opinion filed June 20, 1949. Rehearing denied July 1, 1949. Released for publication July 18, 1949.

Kelly & Crawford, of Chicago, for appellant; Raymond H. Groble, Jr., of Chicago, of counsel.

Moses, Bachrach & Kennedy, of Chicago, for appellee; Herbert H. Kennedy, Morris Solomon and Felix Visk, all of Chicago, of counsel.

Mr. Justice Niemeyer delivered the opinion of the court.

Defendant appeals from a judgment entered on a verdict in an action brought by the beneficiary of an insurance policy issued on the life of the insured, who died on Bataan Peninsula in the Philippine Islands February 9, 1942, having been killed in action while in the service of the military forces of the United States.

Pending the action, the administrator of the beneficiary was substituted as plaintiff.

To the policy, issued August 23, 1940, was attached a rider entitled "Special Conditions Relating to Military or Naval Service and War Deaths," in part as follows:

"The insured may not serve in the Military or Naval Forces of any country at War, unless he has received the consent in writing of the President, a Vice-President, the Secretary, or any Assistant Secretary of the Company and pays to the Company the extra premiums required by the Company for and during such service. If the insured does serve in such Military or Naval Forces without such consent or without paying the required extra premiums and (a) dies from any cause while in such service, or (b) dies within six (6) months after termination of such service as a result of wounds, injury, sickness or disease received or suffered while in such service, the liability of the Company will be limited to the premiums accordingly paid on this policy less any indebtedness to the Company secured by the policy."

The complaint, after alleging the time and manner of the death of the insured, alleged that because of the conditions existing on and subsequent to the declaration of war in December 1941, "it became and was impossible for said insured to perform or comply with any of the 'Special Conditions of said policy of insurance relating to Military or Naval Service and War Deaths' as set forth in said policy; that by reason thereof, said Special Conditions at no time became effective or binding" on the insured or plaintiff. Defendant denied liability except for return of the premiums, amounting to $106.40, paid on the policy, which amount it tendered, because of failure of the insured to comply with the provisions of the rider. In reply to defendant's answer plaintiff alleged that the pro-

visions and conditions contained in the rider are "vague, uncertain, ambiguous, and indefinite and by reason thereof are illegal, invalid and void," and that the rider was illegal and void because issued and delivered within the State of Illinois without approval thereof by the Director of Insurance. On the trial evidence was introduced as to the time and manner of the death of the insured, the inability of persons in the armed forces in the Philippines to communicate with the United States after Japan's attack on December 8, 1941, and that the Director of Insurance had refused to approve the rider attached to the policy. Defendant's motions for a directed verdict and for judgment notwithstanding the verdict were overruled.

Sections 143 and 442 of the Illinois Insurance Code [Ill. Rev. Stat. 1947, ch. 73, pars. 755, 1054; Jones Ill. Stats. Ann. 66.818, 66.1117] are pertinent. The former provides that no company transacting the kind of business in which defendant is engaged "shall issue or deliver in this State a policy or certificate of insurance, attach an endorsement or rider thereto . . . in this State until the form and content of such policy, certificate, endorsement, rider . . . has been filed with and approved by the Director. It shall be the duty of the Director to withhold approval of any such policy, certificate, endorsement, rider . . . filed with him if it violates any provisions of this Code, contains inconsistent, ambiguous or misleading clauses . . . ." Section 442 provides that "Any contract or policy of insurance or any application, endorsement or rider form used in connection therewith . . . issued without submitting same for approval by the Director in accordance with section 143, shall nevertheless be held valid . . . ." The only objections made to the rider are that its provisions and conditions are "vague, uncertain, ambiguous and indefinite," and that the rider was not approved by the Director of Insurance. In construing a war clause similar to that

before us the court in *Lofstead v. Bank Savings Life Ins. Co.,* 118 Kan. 95, said: "Insurance companies cannot afford to insure war risks at peace-time rates. Such a practice would discriminate unjustly against policyholders not engaging in military service, would be indefensible as a business policy, and ought not to be permitted on grounds of public policy." The rules of construction of insurance policies are the same as those governing other contracts. As said in *Zitnik v. Burik,* 395 Ill. 182:

"The principles governing the interpretation and construction of insurance contracts do not differ from those controlling in other contracts. (*Capps v. National Union Fire Ins. Co.,* 318 Ill. 350; *Cottingham v. National Mutual Church Ins. Co.,* 290 Ill. 26.) They must be construed according to the sense and meaning of the terms which the parties have used and if the language is clear and unambiguous it must be taken and understood according to its plain, ordinary and popular sense. (*Moscov v. Mutual Life Ins. Co.,* 387 Ill. 378; *Chicago National Life Ins. Co. v. Carbaugh,* 337 Ill 483.) The courts cannot make a new contract by supplying provisions nor can they give plain and unambiguous terms a distorted construction that will defeat the clear intent and purpose of the contract."

No uncertainty or ambiguity in the policy as distinguished from the rider is pointed out. The sole uncertainty and ambiguity in the rider claimed by plaintiff is that the amount of the extra premiums is not fixed but is left to be determined by the insurer in its sole discretion. In the absence of service in the military forces of the country at war, the company agreed on the death of the insured to pay $5,082, the amount specified on the face of the policy. If the insured died while in the service of the military forces of a country at war the company agreed only to pay or return the premiums paid on the policy, less any indebtedness secured by the policy, unless the insured received the

consent in writing of certain designated officers of the company to serve in the military forces and paid the extra premiums required by the company for and during such service. The rider clearly requires a new agreement or meeting of the minds of the parties before the company becomes liable for the full amount specified in the policy on the death of an insured who dies while in the military service of a country at war. The company is not required to give, through the designated officers, its written consent or to fix the extra premiums to be paid. The insured is under no obligation to pay the extra premiums. Neither the company nor the insured can require the other to continue the policy in force for its face value during the service of the insured in the military forces of a country at war. Unless the company is ready to consent to the military service of the insured and the insured manifests a desire to continue the policy in force for its full face value, there is no need for the company to consider an extra premium or make it fixed and certain. In *Lofstead v. Bank Savings Life Ins. Co., supra,* the court said:

"To keep the amount of the policy at $1,000 (its face value) the insured was obliged to obtain the company's written consent. The company was not obliged to consent, but if it did so the insured was required to pay an extra premium at the company's established rate. There is no rule of law which required this condition to be more explicit in order to validate reduction of liability to cash surrender value."

The court discussed but refused to follow *Arendt v. North American Life Ins. Co.,* 107 Neb. 716, relied upon by plaintiff. In *Mattox v. New England Mut. Life Ins. Co.,* 25 Ga. App. 311, 103 S. E. 180, the court said: "It was incumbent upon the insured, if he desired to keep the policy in force for its full face value, to notify the company of his intention to enter military service, so

that the company would have an opportunity to demand of him the extra premium required, under the terms of the 'war clause,' for such service." Also see *Field v. Western Life Indemnity Co.*, 227 S. W. 530 (Tex. Civ. App.). The provisions of the rider show that the parties were contracting with reference to the possibility of the service of the insured in the military forces in time of war, and to provide for that contingency. Therefore, as said in 56 Am. Jur., War, section 52: "If the parties to a contract contract with reference to the existence of a state of war, there is, of course, no basis for reading into the contract an implied reservation in case of difficulty or impossibility of performance occasioned by war conditions."

Notwithstanding the refusal of the Director of Insurance to approve the rider, its validity was a question for the trial court, unaffected by any previous ruling of the Director. *Kocak v. Metropolitan Life Ins. Co.*, 144 Misc. 422, 258 N. Y. S. 937 (affirmed 237 App. Div. 780, 263 N. Y. S. 283); *Frenzer v. Mutual Benefit Health & Accident Ass'n*, 27 Cal. App. (2d) 406. The use of the rider without the approval of the Director might subject the company to a fine or penalty under sections 440 and 446 of the Insurance Code, but it does not destroy the terms of the rider. In *Graf v. Employers' Liability Assur. Corp.*, 190 Iowa 445, the court said:

"The defendant had not filed a form of its policy with the auditor of state, nor had it been approved in the manner exacted. This rendered it subject to the imposition of a fine, but did not destroy the terms of its contract with the insured. . . . What we hold is that, notwithstanding the failure of the defendant to obey the statute, it is not relieved thereby from complying with its contract, being estopped from pleading its noncompliance therewith; *and that the insured may recover, if at all, only on the terms of the instrument as written.*" (Italics ours.)

Also see *Szymanski v. John Hancock Mut. Life Ins. Co.*, 304 Mich. 483, *Walters v. Western Auto Ins. Co.*, 116 Kan. 404, *Southern Casualty Co. v. Hughes*, 33 Ariz. 206, and 44 C. J. S. Insurance, § 253.

Defendant's motions should have been sustained. The judgment is reversed, and judgment entered here for plaintiff for $106.40.

*Reversed and judgment for plaintiff entered in this court.*

TUOHY J., concurs.

FEINBERG, P. J., dissents. The rider attached to the policy provided for a conditional limitation upon the liability of the company to pay the face of the policy. The limitation, involving the contingency of the insured serving in the military or naval forces of any country "at war," imposed two conditions: (1) that he obtain the consent in writing from the company, and (2) "pays to the Company the extra premiums required by the Company for and during such service." Failure to obtain the consent and pay the extra premiums required limited the liability of the company to pay only the premiums paid on the policy less any indebtedness to the company. That the company had a right to protect itself against a war risk is conceded, but the protective provision which limits the liability must be clear and definite, not vague and ambiguous. It is intended for the protection of the company, and the language employed by the company should be construed most strongly against the company under all the settled rules of construction. How much extra premium the insured was to pay the company is not defined or prescribed by any standard or measure which would make it reasonably clear to any ordinary person. Under the provision of the rider there is nothing to prevent the company from demanding an exorbitant extra premium. It could be prohibitive. Would the insured under such circumstances be at the mercy of the company, is a question that naturally arises. To

permit it, in my judgment, would be taking an unfair advantage of the insured. Section 143 of the Illinois Insurance Code (ch. 73, par. 755, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 66.818]) specifically makes it the duty of the director of insurance to withhold approval of any policy, certificate, endorsement, etc., filed with him, if, among other things, it contains "inconsistent, ambiguous or misleading clauses, or contains exceptions and conditions that unreasonably or deceptively affect the risk purported to be assumed in the general coverage of the policy."

If the courts will differ as to the proper construction of the rider in the instant case, as is apparent from the finding of the trial court and that of the majority opinion, then certainly no lay person can be expected to know the proper meaning of the rider in question and could be readily misled.

In *Arendt v. North American Life Ins. Co.*, 107 Neb. 716, the provision of the policy was like the one in the instant case, except that it provided with respect to the payment of the extra premium that it was not to exceed 3 per cent of the face of the policy. The court, after reviewing a number of authorities on the question, held at page 735:

". . . as the increased premium was not fixed or determined, so far as this contract is concerned, there can be no basis of computation. The contract of insurance simply says that it shall not exceed 3 per cent of the face of the policy. This is simply fixing the maximum but no determination of the exact amount.

". . . the provision for an increased premium of not exceeding 3 per cent of the face of the policy on the basis and computation prescribed by its terms is uncertain and indefinite, . . . ."

The majority opinion cites *Lofstead v. Bank Savings Life Ins. Co.*, 118 Kan. 95, in support of its position that the rider in the instant case is not ambiguous, and

states that the *Lofstead* case discussed the *Arendt* case but refused to follow it. I do not so read the *Lofstead* case. It did not disagree with the *Arendt* case; it merely distinguished it. The war risk provision in the *Lofstead* case provided that in the event of failure of the insured to obtain the company's consent and pay the extra premium therefor at the established rate, the company's liability would be limited to the cash surrender value of the policy at the date of death. It is clear, the court held, that there was no uncertainty with respect to the extra premium. It was at the rate then established by the company, and not left to uncertainty as in the instant case. In discussing the *Arendt* case, the Supreme Court in the *Lofstead* case distinguished the provision in the *Arendt* case, and said:

"The contract furnished no solution, because a factor necessary in computing the amount—extra premium— was left indefinite. Because the face of the policy was not reducible by any definite method of computation to any definite sum, the court held it was not reduced at all. We have no such case here."

The rule in the *Arendt* case is sound and logical and should be applied to the instant case, where we find the rider more ambiguous than the one in the *Arendt* case.

The judgment of the superior court should be affirmed.