(No. 31265.—

JOHN T. DEMPSEY, Public Administrator, Appellant, *vs.* THE NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY, Appellee.

*Opinion filed November 22, 1949.*

Moses, Bachrach & Kennedy, of Chicago, (Herbert H. Kennedy, Morris Solomon, Felix Visk, and William C. Wines, of counsel,) for appellant.

Kelly & Crawford, of Chicago, (Raymond H. Groble, Jr., of counsel,) for appellee.

Mr. Justice Simpson delivered the opinion of the court:

This is a suit brought by appellant, the public administrator of Cook County, as administrator of the estate of the deceased beneficiary under a policy of life insurance to which was attached a war rider. The suit was for the recovery of full benefits under the policy. From a verdict and judgment in the superior court of Cook County for $6463.55, the maximum amount due under the policy, the insurance company appealed. The Appellate Court reversed the judgment and entered one for $106.40, which was the sum due under the rider. The cause comes to this court on certificate of importance.

The facts of the case are not in dispute. August 23, 1940, a policy of insurance was issued by appellee, the

National Life and Accident Insurance Company, on the life of Edward G. Winger, then 19 years of age. At that time Winger was a member of the Maywood Tank Corps of the Illinois National Guard. This fact was known to the insurance company, and a war rider was attached to the policy at the time it was issued. The body of the policy insured the life of Winger without excepting death while in military service in time of war. The rider attached to the policy was entitled, "Special Conditions Relating to Military or Naval Service and War Death." Its purpose was to amend the body of the policy in certain particulars. Among its pertinent provisions were those which provided the insured might not serve in the military or naval forces of any country at war unless he received the consent in writing of certain executive officers of the company, and paid to the company the extra premiums required by it during such military service; and that if the insured did serve in such military forces without the consent of the company or without paying the required extra premiums, the liability for his death would be limited to the premiums actually paid on the policy.

This form of rider had been filed with the Illinois Director of Insurance for his approval, as required by law. July 23, 1940, exactly one month before the rider was issued, the Director notified the insurance company that the form of the rider was not acceptable and could not be approved. Nevertheless the rider in question was issued, without thereafter securing approval of the Director of Insurance, in direct violation of section 143 of the Insurance Code. (Ill. Rev. Stat. 1947, chap. 73, par. 755.) Soon after the policy was issued the Maywood Tank Corps was activated into the regular army of the United States. One year later it was sent to the Philippine Islands where it arrived on November 20, 1941. In less than three weeks thereafter the islands were attacked, without warning, by the military forces of Japan, and communications with the

mainland of the United States were completely severed. Winger was killed in action on Bataan Peninsula, two months and one day after the initial surprise attack by the Japanese, without having asked the consent of the company to serve in the military forces in the war with Japan, and without offering to pay whatever extra premiums the company should then require. The company had never set up any standard by which the insured could compute the extra premiums, if it should consent that he serve in the military forces in time of war, and had never notified him what extra premiums it would require in such case.

The general principles governing the interpretation and construction of insurance contracts do not differ from those controlling in other contracts. (*Zitnik* v. *Burik,* 395 Ill. 182; *Capps* v. *National Union Fire Ins. Co.* 318 Ill. 350.) The contract in this case is contained in the application for insurance, the body of the policy, and the rider attached to the policy. They must be construed according to the sense and meaning of the terms which the parties have used, and if the language is clear and unambiguous it must be taken and understood according to its plain, ordinary and popular sense. *Moscov* v. *Mutual Life Ins. Co.* 387 Ill. 378; *Chicago National Life Ins. Co.* v. *Carbaugh,* 337 Ill. 483.

The primary obligation of insurance liability undertaken by the company appears in paragraph 1 of the policy. It is there provided, on the face of the policy, that upon the receipt at its home office of due proof of death of the insured, during the continuance of the policy, the company will pay to the named beneficiaries, if death occurs before age sixty, the sum of $5082, with certain reductions in that sum if death occurs after that age. The body of the policy contains no exceptions to the full payment of this sum on account of death from any cause, except suicide within a limited time. The express provision on the face of the policy insuring against death from any cause, with

the exception of suicide within a limited period, is of plain and unmistakable meaning and full weight should be given to it unless elsewhere in the contract such meaning has been changed or modified in clear and unambiguous terms.

The war rider attached to the policy provided that it was thereby made a part of the policy and that any conflicts between any terms of the rider and any term of the policy were modified to conform to the rider. Then follows the clause which is the subject of the assignment of error: "The insured may not serve in the Military or Naval Forces of any country at War unless he has received the consent in writing of the President, a vice-President, the Secretary, or an Assistant Secretary of the Company and pays to the Company the extra premiums required by the Company for and during such service." If this provision is not observed the obligation of insurance liability is reduced to a return of the premiums actually paid on the policy, if the insured dies from any cause while in service, or dies within six months after termination of such service as the result of a wound, injury, sickness or disease received or suffered while in such service, or dies within two years from the result of any such cause received or suffered outside the limits of the continental United States.

Provision was also made for the amendment of the incontestability clause to include an exception "for violation of the conditions of the policy relating to Military or Naval Service in time of War." No direct exception against death while in or as a result of sickness or injury received while in military service is contained in the contract. Obviously, the purpose of the rider was not to guard the company against death of the insured resulting from the well-known hazard of military service in time of war, but rather to reduce and limit the obligation of insurance liability of the company should death result from any cause, where military status in time of war was assumed by the insured without the consent of the company or without

the payment of extra premiums. The principal question in the case is whether the terms and provisions of the rider are sufficiently clear and unambiguous to accomplish this purpose.

It is strenuously contended by appellant that the war rider is indefinite and ambiguous because it did not fix the amount of the extra premiums required, should the company consent to service in the military forces in time of war, and did not define or refer to any standard by which any such extra premiums could be computed or determined. No Illinois cases are cited on this point, and we have found none.

The Supreme Court of Nebraska, soon after the first World War, had a similar question presented in the case of *Arendt* v. *North American Life Ins. Co.* 107 Neb. 716, 187 N.W. 65. The policy in that case insured against death in any part of the world, in any occupation, or from any cause, except military or naval service in time of war. The policy was made incontestable after one year from date of issue except for nonpayment of premiums, or for military or naval service in time of war, which military or naval service required the written consent of the president and the payment of an extra premium, not to exceed 3 per cent of the face of the policy; otherwise, without such consent, the amount payable under the policy was a lesser sum. The insured was inducted into military service, while the policy was in force, and died of pneumonia in training camp.

In construing the policy, in the Nebraska case, the court pointed out that if the clause in regard to military service in time of war was of doubtful meaning and not in full harmony with the express provision of the policy insuring against death, that such doubt should be construed most strongly against the company, that forfeitures are not favored, and that before the company could escape liability it must show the liability claimed was by the terms

of its contract specifically exempted. It was noted that no express consent of the company for service in the military forces was given or indorsed upon the policy, nor was there any extra premium demanded or paid; that so far as the insured was concerned there was no extra premium fixed, and until such premiums were definitely fixed and indorsed on the policy, or on the application, there could be no basis for calculation; that as the increased premium was not fixed or determined, so far as the contract was concerned, there could be no basis of computation. After considering the terms of the policy and the application, which constituted the contract, the court concluded that the provision for increased premium of not exceeding 3 per cent of the face of the policy on the basis and computation prescribed by its terms was uncertain and indefinite. It is true, as pointed out by counsel for appellee, that in arriving at its decision the court in that case laid stress on the fact that the death of the insured resulted from a cause not peculiar to military service. Such a finding was undoubtedly necessary, because the policy under consideration, in addition to the military clause requiring consent of the company and extra premiums, also contained an express provision insuring against death from any cause, except military service in time of war. The court affirmed the judgment in favor of the plaintiff because the military clause was indefinite and uncertain, after finding that the death of the insured had not resulted from a cause excluded by the terms of the policy.

In 1946 the Louisiana Court of Appeals expressly followed the *Arendt case* in deciding *Edwards* v. *Life & Casualty Ins. Co.* 25 So. 2d 552. Two policies were in force when the insured was inducted into military service. The first policy contained a provision that the insurance liability was limited to the reserve of the policy, or to $\frac{1}{5}$ of the sum payable at death, if the insured died when in military service in time of war, or as a direct result of

such service, without securing a permit signed by an executive of the company and paying such extra premium as the company might fix to cover the hazard. The second policy provided that the insured might serve in the Navy or Army in time of peace, but in time of actual war a written permit must be obtained from the company and an extra premium paid, or the company liability be restricted to the net reserve of the policy.

The court held that the insured was entitled to a definite understanding as to the basis of any extra premium which he might be called upon to pay. The military clause, in each case, was held to be ambiguous because it failed to fix either the conditions of a permit allowing service or the amount of the premiums thereunder. The Supreme Court of Louisiana affirmed the Court of Appeals in *Edwards* v. *Life & Casualty Ins. Co.* 210 La. 1024, 29 So. 2d 50.

Appellee cites *Lofstead* v. *Bank Savings & Life Ins. Co. of Illinois,* 118 Kas. 95, 234 Pac. 50, as holding contrary to the *Arendt case,* and in support of appellee's position that the rider in question is not ambiguous. In the *Lofstead case* the policy provided that the insured was required to obtain the consent of the company for military status in time of war and pay the extra premium at the established rate, otherwise the liability of the company would be limited to the cash surrender value of the policy at the time of death. The court held that there was no uncertainty regarding the extra premium because it was fixed in the policy at the established rate of the company. The court then specifically distinguished its holding from that of the *Arendt case.* The reasoning of the *Lofstead case* is not persuasive in the case now under consideration because the military clause in that case contained an express standard for computation of the extra premiums required. No standard or basis for computing such extra premiums appears in the war rider attached to the policy in the case before us.

The military clause found only in the rider attached to the policy purports to change and modify the express provision of the policy insuring against death, by reducing and limiting the obligation of insurance liability of the company. In order to keep the obligation of the company at $5082, the amount provided on its face, the insured was required to obtain the consent of the company, if he entered military service in time of war, and also to pay extra premiums required by the company. If he entered war service without these two essential requirements the insurance liability of the company became limited to the amount of the premiums actually paid.

While the company was not obliged to consent, if it did so the insured was required to pay extra premiums. The amount and extent of any such extra premiums are not fixed or defined in the rider, nor is any standard or basis established by which they could be computed or determined. The insured is left completely uninformed as to the premium requirements necessary to keep his policy in full force and effect, in the event the company should consent to his entering war service. In this respect the rider is indefinite and uncertain and lacks mutuality. We cannot construe it as changing and limiting the primary obligation of insurance liability expressly provided for in the body of the policy. In view of our holding, it will not be necessary to decide any of the other points raised.

For the reasons above expressed, the judgment of the Appellate Court for the First District is reversed and the judgment of the superior court is affirmed.

*Appellate Court reversed;*
*superior court affirmed.*