PROTECTIVE INSURANCE COMPANY, Plaintiff-Appellant, v. EARL COLEMAN, Indiv. and d/b/a Earl's Agency, *et al.*, Defendants-Appellees.

Second District No. 2—85—0395

Opinion filed June 24, 1986.

Stephen M. Passen, of Chicago, for appellant.

Noel C. Davis, of Banbury & Davis, of Aurora, for appellees.

JUSTICE HOPF delivered the opinion of the court:

Plaintiff, Protective Insurance Company, filed a complaint for declaratory judgment, requesting the trial court to determine whether an endorsement to an insurance policy issued by plaintiff to defendant Earl Coleman, d/b/a Earl's Agency, prevented coverage to defendant for a claim arising out of an alleged accident involving a truck owned by defendant and a pedestrian, Homer F. Hancock, on October 13, 1981. Defendants Coleman and Hancock filed motions for summary judgment, claiming that the endorsement was unenforceable as a matter of law. Subsequent to a hearing, the trial court granted the mo-

tion. Plaintiff filed a motion for reconsideration which was denied.

Plaintiff appeals, contending that the trial court erred in granting the defendants' motions for summary judgment, as genuine issues of material fact existed. Additionally, plaintiff contends that the trial court erred as a matter of law because: (1) the endorsement to Coleman's insurance policy is legal and enforceable; (2) adequate consideration was given for the endorsement; and (3) the insurance policy and endorsement are not in conflict and must be construed together.

Plaintiff, through its agent Anton C. Hrubes, issued an insurance policy effective from February 16, 1981, to November 26, 1981, to defendant Earl Coleman, d/b/a Earl's Agency. Prior to the issuance of the policy, defendant had completed a "Truckmen's Insurance Application," indicating the vehicle to be insured for his cartage business and the type of coverage desired. Additionally, defendant designated one individual, Gerald Smith, as driver of the truck and indicated Smith had 22 years of truck-driving experience.

In a letter dated April 17, 1981, plaintiff's agent, Hrubes, informed defendant's insurance agent, William Afryl, that plaintiff had determined that defendant's 20-year-old son, James Coleman, was also driving the vehicle covered by the policy. Hrubes informed Afryl that James Coleman's age did not meet the plaintiff's underwriting requirements and that, therefore, plaintiff was requiring defendant to accept a policy endorsement expressly excluding coverage to any driver of scheduled vehicles under the age of 21 years. The specific endorsement prepared by Hrubes stated:

> "It is hereby agreed and understood by all parties concerned that coverage for the insured and/or any operator under the age of 21 years shall not apply if any driver operating any vehicle scheduled has not achieved his 21st birthday.
>
> All other terms and conditions of this policy remain the same."

In his affidavit, Hrubes stated that on April 17, 1981, he also informed Afryl that unless defendant executed the endorsement, defendant's policy would be cancelled. Afryl's affidavit made no mention of this fact.

On or about May 1, 1981, Afryl received the endorsement and subsequently telephoned defendant, advising defendant that plaintiff would not cover any driver of defendant's commercial vehicle who was under 21 years old, and that plaintiff was requiring defendant to sign an endorsement to that effect. Afryl forwarded the endorsement to defendant on May 11, 1981, and asked defendant to sign and return it. Defendant signed the endorsement on May 15 and returned it

to Afryl, who forwarded it to plaintiff's office. On May 21, Hrubes, as plaintiff's authorized representative, executed the endorsement.

On October 13, 1981, Homer Hancock, a pedestrian, was allegedly injured when struck by a truck owned by defendant and operated by Tony G. Spina. On February 25, 1982, Hancock brought an action against Earl Coleman and Tony G. Spina, seeking damages for his injuries. Spina, in answer to Hancock's complaint and in answers to interrogatories, denied any involvement in the accident.

On March 28, 1983, plaintiff, in its complaint for declaratory judgment, contended that defendant's son, James Coleman, was operating the motor vehicle involved in the occurrence alleged in Hancock's complaint, that James Coleman was under the age of 21 at the time of the occurrence, and that, therefore, the endorsement to the insurance policy issued by plaintiff did not afford Earl Coleman any coverage for any claim arising out of the October 13, 1981, occurrence. James Coleman failed to appear and file an answer to plaintiff's complaint; an order of default was entered against him on August 30, 1984. In January 1985, Earl Coleman and Homer Hancock filed motions for summary judgment, claiming that the policy endorsement was invalid and unenforceable.

Defendant Coleman filed his own affidavit and that of William Afryl. Plaintiff filed the affidavits of Anton C. Hrubes and Frank Weaver, a supervising insurance analyst for the Department of Insurance. In his affidavit Weaver opined that, based on his eight-year experience in annually reviewing or supervising reviews of 10,000 to 11,000 insurance-policy forms, including endorsements, to determine if they comply with insurance statutes, department regulations, and official department positions, plaintiff was not required to file its endorsement to be valid. Also submitted to the court was the insurance policy and endorsement in question, Anton Hrubes' April 17, 1981, letter to William Afryl, William Afryl's May 11, 1981, speed letter to Earl Coleman, and plaintiff's memorandum in opposition to the motions for summary judgment.

At a hearing conducted on February 15, 1985, the court heard arguments in support of and in opposition to defendants' motions for summary judgment. The court took the matter under advisement, issuing its written order on February 25, 1985. In that order the court granted defendants' motions for summary judgment, concluding that plaintiff's endorsement was illegal as a matter of law, because plaintiff failed to have it approved by the Director of Insurance before issuing it; that inadequate consideration had been given by plaintiff to defendant when plaintiff issued the endorsement; and that the policy

and the endorsement were in conflict and therefore had to be construed strictly against plaintiff, the maker. Additionally, the court held that plaintiff's insurance policy provided coverage for defendant, Earl Coleman, and that plaintiff had a duty to legally defend Coleman in the action brought against him by Homer Hancock.

On March 21, 1985, plaintiff filed a motion for reconsideration, which was subsequently denied. This appeal ensued.

 We first consider whether the trial court erred in granting summary judgment. On a summary judgment motion the trial court is to determine the existence or absence of a genuine issue as to any material fact from affidavits, depositions, admissions, exhibits, and pleadings in the case. (*William v. Alfred N. Koplin & Co.* (1983), 114 Ill. App. 3d 482, 485, 448 N.E.2d 1042.) Summary judgment is to be awarded with caution so as not to preempt a right to a trial by jury or the right to fully present a factual basis for a case where a material dispute may exist. (*W. H. Lyman Construction Co. v. Village of Gurnee* (1985), 131 Ill. App. 3d 87, 92, 475 N.E.2d 273.) Although a summary judgment is a drastic remedy, its use is to be encouraged in the proper case (*Continental Casualty Co. v. Polk Brothers, Inc.* (1983), 120 Ill. App. 3d 395, 403, 457 N.E.2d 1271) to avoid the unnecessary expense of trial (*Audition Division, Ltd. v. Better Business Bureau of Metropolitan Chicago, Inc.* (1983), 120 Ill. App. 3d 254, 256, 458 N.E.2d 115). Since the construction of an insurance policy is a matter of law, summary judgment would appear to be an appropriate disposition when such construction is at issue, as in the instant case. *Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 155, 466 N.E.2d 1091.

Plaintiff contends, however, that summary judgment was inappropriate in the case at bar as a genuine issue of material fact, *i.e.*, who was operating the truck at the time of the accident, existed. Plaintiff claims that defendant's 20-year-old son, James Coleman, was driving the truck; defendant denies this fact. In his complaint, Homer Hancock, the party allegedly injured by defendant's truck, named Tony Spina as the driver involved. However, Spina denied operating the vehicle at the time of the accident. Also, plaintiff contended at the summary judgment proceeding that Spina was not operating defendant's truck on the day of the accident, as Spina was in criminal court on that date.

Defendant argues that for purposes of the summary judgment, it is immaterial who was driving the truck, as the validity of the endorsement, denying coverage to any driver under 21 years old, is not dependent upon this disputed fact. It is defendant's position that this

factual issue is irrelevant to the issues raised in the summary judgment. This court does not agree. The plaintiff's duty to defend defendant in Hancock's personal-injury suit was dependent upon who was driving the truck. Once that fact was determined, the policy needed to be examined to decide if coverage was afforded to that driver. We believe the validity of the endorsement should have come into question only if a factual determination had been made that defendant's truck was being operated by someone under 21 years of age.

■ In plaintiff's complaint for declaratory judgment, plaintiff asked the trial court to also determine that the insurance policy issued to defendant did not afford coverage to Spina. It is unclear from the record whether Spina was an employee of defendant, or one to be insured under the policy. Thus, defendant's theory of first considering the validity of the endorsement rather than first considering who was driving, precludes plaintiff from also showing whether it is responsible for the defense of Spina if, in fact, Spina, rather than James Coleman, was operating the truck. The existence of factual questions will not deter summary judgment unless these facts are material to the litigation. (*Burks Drywall, Inc. v. Washington Bank & Trust Co.* (1982), 110 Ill. App. 3d 569, 575, 442 N.E.2d 648.) Who was operating defendant's truck at the time of Hancock's accident is a fact material to the litigation.

Additionally, the validity of the subject endorsement constituted a mixed question of fact and law, as plaintiff avers. A letter from plaintiff's agent, Anton Hrubes, to defendant's insurance agent, William Afryl, explains that James Coleman's age "falls far short" of the plaintiff's underwriting requirements. The letter also implies that coverage under the original policy was based on defendant's representation to plaintiff of the personnel who would be actually driving the truck.

The uncontradicted affidavit of Frank Weaver, a supervising insurance analyst for the Department of Insurance with eight years of experience in annually reviewing 10,000 to 11,000 insurance policies, riders, and endorsements, states, that, in his opinion, the plaintiff's endorsement was prepared to meet a special, unusual, peculiar or extraordinary condition applying to an individual risk. In a summary judgment proceeding, an affidavit which asserts an opinion must first qualify as expert testimony. (See *Go-Tane Service Stations, Inc. v. Sharp* (1979), 78 Ill. App. 3d 785, 789, 397 N.E.2d 249.) Weaver's affidavit states specific facts which qualify him as an expert in analyzing the validity of endorsements and in formulating conclusions regarding

whether or not an endorsement is valid. We believe his expertise in the area of reviewing and analyzing insurance documents, as presented in his affidavit, rendered his opinion regarding the validity of the subject endorsement appropriate to a summary judgment proceeding, despite defendant's claim that Weaver's affidavit failed to satisfy the requirements of Supreme Court Rule 191(a) because it consisted only of conclusions. 87 Ill. 2d R. 191(a).

The various documents submitted to the trial court, in particular, the aforementioned letter from Hrubes to Afryl and Weaver's affidavit, created material fact issues as to whether plaintiff relied, in drawing up the insurance policy, upon specific representations by defendant regarding the particular individual, or individuals, who would be operating defendant's truck; as to why the endorsement was prepared; and as to whether the endorsement met a special, unusual, peculiar, or extraordinary condition.

Although plaintiff claims that a mixed question of fact and law also exists on the question of adequate consideration for the endorsement, this court does not agree. Both parties acknowledge that no adjustment in the premium occurred as consideration for defendant's agreeing to sign the endorsement. However, plaintiff argues that its relinquishment of its right to cancel the policy in exchange for defendant's acceptance of the endorsement constituted adequate consideration. Whether there is consideration for an agreement is a question of law for the court (*Lesnik v. Estate of Lesnik* (1980), 82 Ill. App. 3d 1102, 1107, 403 N.E.2d 683), and, thus, whether or not the cancellation threat was adequate consideration was strictly a determination for the trial court.

■ On a motion for summary judgment, the trial court must construe the evidential material strictly against the movant and liberally in favor of the opponent. (*Holbrook v. Peric* (1984), 129 Ill. App. 3d 996, 998, 473 N.E.2d 531.) The motion should be allowed only when the moving party's right to it is clear and free from doubt. (*Schnabel v. County of Du Page* (1981), 101 Ill. App. 3d 553, 560, 428 N.E.2d 671.) Here, the aforementioned factual issues were material to a determination of plaintiff's duty to defend its insured and, therefore, demonstrate that defendant's right to summary judgment was not free from doubt. We find that the trial court erred in granting summary judgment, as genuine issues of material fact existed.

Additionally, we believe the trial court erred in finding the endorsement to defendant's insurance policy was illegal and unenforceable, and, therefore, the summary judgment was incorrectly entered as a matter of law. In its order, the trial court found the endorsement

to be illegal and unenforceable because it violated section 143(1) of the Illinois Insurance Code which requires policy documentation, including endorsements, to be filed with and approved by the Director of Insurance prior to issuance or delivery. (Ill. Rev. Stat. 1983, ch. 73, par. 755(1).) In the instant case, plaintiff failed to file its endorsement and have it approved before it issued it to defendant. Nevertheless, as pointed out by plaintiff, its failure to comply with this regulatory statute did not necessarily affect the validity of the endorsement, as section 442 of the Illinois Insurance Code provides:

"Any contract or policy of insurance or any application, endorsement or rider form used in connection therewith issued in violation of any section of this Code requiring certain provisions to be inserted therein or the inclusion of provisions prohibited, or issued without submitting same for approval by the Director in accordance with section 143, *shall nevertheless be held valid* but shall be construed in accordance with the requirements of the section that the said policy, application, endorsement or rider violates, and when any provision in such contract, application, endorsement or rider is in conflict with any provision of this Code, the rights, and obligations of the company thereunder shall not be less favorable to the holder of the contract and the beneficiary or annuitant thereunder than is required by the provisions of this Code applicable thereto." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 73, par. 1054.

In the only apparent case dealing with this section the appellate court held that the use of a rider attached to an insurance policy without the approval of the Director of Insurance did not affect its validity, although it might subject the insurance company to a fine or penalty. (*Dempsey v. National Life & Accident Insurance Co.* (1949), 338 Ill. App. 109, 115, 86 N.E.2d 871, *rev'd on other grounds* (1949), 404 Ill. 423, 88 N.E.2d 874.) Although the Illinois Supreme Court reversed the outcome of the *Dempsey* case, it based its finding that the rider was invalid on the fact that it was indefinite and uncertain and not on the fact that the rider was not approved by the Director.

Plaintiff maintains that in addition to the endorsement's validity as established by section 442 of the Illinois Insurance Code and by the *Dempsey* case, the endorsement is, nevertheless, valid without the Director's approval because it falls within the one exception to section 143 of the Illinois Insurance Code. That exception provides:

"This Section shall not apply to surety contracts or fidelity bonds nor to riders or endorsements prepared to meet special, unusual, peculiar or extraordinary conditions applying to an in-

dividual risk." (Ill. Rev. Stat. 1983, ch. 73, par. 755(3).)

It is plaintiff's contention that the subject endorsement met a special, unusual, peculiar, or extraordinary condition. To support this contention plaintiff first relies on the affidavit of Frank Weaver, a supervising insurance analyst, with eight years of experience in analyzing insurance policies, endorsements, and riders. In his uncontradicted affidavit Weaver stated that the endorsement in question was designed to meet such a condition.

Additionally, plaintiff points out that the affidavit of its agent, Anton C. Hrubes, states that the endorsement was specifically designed and prepared to expressly exclude coverage to defendant's son, James, who Hrubes learned was under 21 years of age and who was a potential operator of the scheduled vehicle under the policy. Plaintiff argues that the endorsement was not intended to withdraw coverage to a large class of potential drivers, as defendant claims, nor to unreasonably and deceptively affect the risks purported to be assumed under the policy. Rather, the endorsement was designed to exclude a particular, individual risk.

Defendant responds that it cannot be considered special, unusual, peculiar, or extraordinary that an individual under 21 years of age drives vehicles. This statement, however, ignores the type of vehicle involved here, a cab or tractor truck used to haul semitrailers, which, in this court's view, would require a degree of specialized driving experience to operate safely on the road.

In defendant's original application for insurance, which is part of the record on appeal, defendant listed one driver, an individual with 22 years of truck driving experience. Additionally, Hrubes' letter to defendant's agent, Afryl, implied that prior to the issuance of the policy, defendant had specifically explained to plaintiff who the actual driver, or drivers, of the truck would be. It appears obvious from Hrubes' letter and plaintiff's subsequent issuance of the subject endorsement that individuals under 21 years old, in particular, defendant's son, had not been previously represented to plaintiff as potential drivers of the semitrailer truck.

Youthful-driver endorsements similar to the one in question here have been held to be valid. In *Allison v. Beechy* (1972), 4 Ill. App. 3d 1096, 282 N.E.2d 487, an endorsement to an automobile policy excluding from coverage male drivers under the age of 25 was held to be valid. Unfortunately, no factual situation is presented for this case as only the abstract was published. Nevertheless, *Allison* was distinguished in *Home Indemnity Co. v. La Barbara* (1974), 19 Ill. App. 3d 1014, 1017, 313 N.E.2d 174, and cited with approval in *Economy Fire*

& *Casualty Co. v. Pearce* (1979), 79 Ill. App. 3d 559, 564-65, 399 N.E.2d 151.

In *Economy Fire* an endorsement attached to an automobile insurance policy which excluded coverage when "an automobile covered by the policy is being driven by any person under 25 years of age, other than the named insured and/or a member of his immediate family" was also found to be valid. Defendant points out that *Economy Fire* did not involve the question of whether the endorsement required approval by the Director of Insurance or whether approval was unnecessary because the endorsement met a special, unusual, peculiar, or extraordinary condition. However, what is of importance in *Economy Fire* to the analysis of the instant case is that the *Economy Fire* court held a youthful-driver endorsement on a standard automobile insurance policy to be valid. Since *Dempsey* stands for the proposition that an endorsement which does not have the approval of the Director is still valid and *Economy Fire* upholds a youthful-driver endorsement, the inference can be drawn that a youthful endorsement which has not obtained the Director's approval can still be valid.

In *Linkens v. Furman* (1964), 52 Ill. App. 2d 1, 201 N.E.2d 645, and *Home Indemnity Co. v. La Barbara* (1974), 19 Ill. App. 3d 1014, 313 N.E.2d 174, cases cited by the defendant, similar youthful-driver endorsements were found to be invalid. However, in each instance the endorsement was inoperative because it was issued in direct defiance of the Director's ruling that such an endorsement was unacceptable. While at first blush *Linkens* and *La Barbara* seem to suggest that some sort of public policy exists against youthful endorsements, this court believes this is an improper inference.

In *Linkens* and *La Barbara* the youthful-driver endorsements were attached to standard automobile policies. Such is not the case here where the policy provides coverage to a cab tractor used for hauling semitrailers. In *Linkens* the insurance company issued an automobile insurance policy to a self-employed caterer on her automobile. No exclusions or conditions restricting the use of the insured automobile by drivers under 25 years of age appeared in the printed portions of the policy. However, according to the insurance company, a restrictive endorsement was transmitted to the insured at the time of the issuance of the policy and that endorsement specifically excluded coverage for anyone under 25 years of age operating the insured automobile. The Director determined that this restrictive endorsement was unacceptable because it contained exceptions and conditions that would unreasonably or deceptively affect the risks purported to be assumed by this standard policy providing coverage on an automobile.

In *La Barbara* the endorsement which was attached to an automobile insurance policy excluded coverage to any male or unmarried female under the age of 25 years, and to any person using the automobile to and from work. The appellate court found that the Director's disapproval of the under-25 exclusive endorsement was not based on a policy against youthful-driver endorsements but on two other grounds: (1) that the insurer was issuing a blank restrictive-endorsement form which contained language denying coverage followed by a blank for typing in the circumstances under which coverage is denied; and (2) that the under-25 exclusion was linked with another exclusion, denying coverage to one driving to and from work. The Director considered the latter exclusion to not be acceptable in any case.

*Linkens* and *La Barbara* are distinguishable from the case at bar and do not, in our view, reflect a public policy against youthful-driver endorsements. Moreover, in comparing the subject endorsement with those in the cases of *Economy Fire, Linkens* and *La Barbara* we believe it could be reasonably concluded that plaintiff's endorsement fell within the purview of section 143(3) which does away with approval by the Director if an exclusion was designed to meet a special, unusual, peculiar, or extraordinary condition applying to an individual risk. Ill. Rev. Stat. 1983, ch. 73, par. 755(3).

As mentioned earlier in this opinion, operating a truck consisting of a tractor or cab portion attached to a semitrailer requires some degree of skill and experience. This is evidenced by the fact that the State of Illinois requires that a vehicle of this type be operated only by one who has been specifically classified to handle such a vehicle. According to section 6—104 of the Illinois Vehicle Code, the license of an operator of a truck similar to defendant's must reflect a "D" classification. (Ill. Rev. Stat. 1981, ch. 95½, par. 6—104.) For a license with this classification to be issued, a driver must qualify for that classification by examination or by such other means that the Secretary of State prescribes. Ill. Rev. Stat. 1981, ch. 95½, par. 6—104.

■ Based on the State requirement that a driver operating a tractor-trailer truck must possess a license specifically denoting that he is qualified to operate such a vehicle, this court concludes that plaintiff's exclusion was designed to specifically meet a special condition applying to an individual risk. The circumstances of the issuance of an insurance policy and the policy's object and purpose are significant and should be considered in ascertaining whether there was coverage. (*Management Support Associates v. Union Indemnity Insurance Co.* (1984), 129 Ill. App. 3d 1089, 1094,473 N.E.2d 405.) Given the nature of defendant's cartage business, the commercial vehicle in-

sured, a cab or tractor truck used to pull semitrailers, and the degree of experience needed to competently and safely operate such a vehicle, we conclude the subject endorsement does address a special condition and is, therefore, valid and enforceable, despite plaintiff's failure to obtain approval of the endorsement by the Director.

■ Having concluded that the endorsement was valid and enforceable without the Director's approval, we next consider whether adequate consideration existed for the issuance of the endorsement. In the instant case both parties agree that the subject endorsement constituted a modification of the original insurance policy. However, defendant maintains no consideration existed for the modification. Generally, a contract modification must be supported by consideration to be valid, but a modification which has been executed will not be disturbed by the court, even in the absence of consideration. (*Snow v. Greisheimer* (1906), 220 Ill. 106, 109, 77 N.E. 110; *Terminal Freezers, Inc. v. Roberts Frozen Foods, Inc.* (1976), 41 Ill. App. 3d 981, 989, 354 N.E.2d 207.) Here, no dispute exists regarding the execution of the endorsement. Defendant's affidavit specifically states that he signed the endorsement on May 15, 1981. The endorsement was then forwarded to plaintiff by defendant's agent, Afryl, and executed by Anton Hrubes as plaintiff's representative. Thus, based on the authority of *Terminal Freezers* and *Snow*, the execution of the endorsement by both parties appears to preclude defendant from now raising any issue of no consideration for the policy modification.

Nevertheless, the plaintiff's forbearance of its right to cancel defendant's insurance policy constitutes sufficient consideration to support the issuance of the endorsement, as forbearance is recognized in a civil action as valid consideration for a contract. (*Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 179, 441 N.E.2d 324.) Defendant contends that forbearance in this instance cannot be considered adequate consideration, since he was never informed that his policy would be cancelled if he did not sign the endorsement. We do not agree with this contention.

The letter from plaintiff's agent, Hrubes, to defendant's agent, Afryl, indicated that the plaintiff would be unable to continue coverage under the policy issued to defendant unless defendant accepted the endorsement. Additionally, the affidavit of Hrubes stated that he informed defendant's agent Afryl that plaintiff would cancel defendant's policy unless defendant executed the endorsement. Defendant's argument that he had no knowledge of plaintiff's threat of cancellation is based on the fact that neither the affidavit of his agent, Afryl, nor defendant's own affidavit makes any reference to plaintiff's

forbearance to cancel in consideration of defendant's execution of the endorsement. However, we believe that by virtue of the relationship between Afryl and defendant, defendant cannot deny any knowledge of plaintiff's threat of cancellation.

An attorney, broker, auctioneer, and other persons similarly employed for a single transaction or for a series of transactions are agents, although as to their physical activities they are independent contractors. (*Kouba v. East Joliet Bank* (1985), 135 Ill. App. 3d 264, 267, 481 N.E.2d 325.) The existence of an agency relationship and its nature and extent may be established by circumstantial evidence, and reference may be made to the situation of the parties, their acts, and other relevant circumstances. (*St. Ann's Home for the Aged v. Daniels* (1981), 95 Ill. App. 3d 576, 579, 420 N.E.2d 478.) Here, various documents presented to the trial court, in particular the affidavit of William Afryl, established Afryl acted as defendant's agent in procuring the insurance policy, in taking receipt of the endorsement sent by plaintiff, in passing it on to defendant with instructions that defendant sign it, and in returning the executed endorsement to plaintiff.

An agent must make known to his principal all material facts within the agent's knowledge which may in any way affect the transaction and subject matter of his agency (*A. T. Kearney, Inc. v. INCA International, Inc.* (1985), 132 Ill. App. 3d 655, 661, 477 N.E.2d 1326), and the agent's knowledge relative to the transaction is imputed to his principal (*Bull v. Mitchell* (1983), 114 Ill. App. 3d 177, 187, 448 N.E.2d 1016). Hrubes' letter to Afryl, which Afryl in his affidavit admits receiving, indicates that the subject endorsement had to be signed if defendant wished to continue coverage of his commercial vehicle.

We conclude, therefore, that the defendant had notice of plaintiff's threat of cancellation either by his own direct knowledge or by that of Afryl's imputed to him, and, therefore, plaintiff's forbearance in canceling its insurance coverage in exchange for defendant's execution of the endorsement constituted sufficient consideration for the contract modification.

■ Last, we consider whether the insurance policy and the endorsement are in conflict and should, therefore, be construed against the plaintiff. Plaintiff contends that the terms of the subject endorsement and the applicable provision of the policy, paragraph II(c), "PERSONS INSURED," are unambiguous and must be construed together. Conversely, defendant argues the endorsement conflicts with the foregoing policy provision and, therefore, paragraph II(c), the clause which affords the more inclusive benefit, should govern.

The policy and endorsements of an insurance policy must be construed together to determine the meaning and effect of the insurance contract. (*Metro Inter-Insurance Exchange v. Anthony* (1971), 1 Ill. App. 3d 612, 615-16, 275 N.E.2d 296.) Here, this court believes the policy and endorsement can be construed together. Under paragraph II(c), coverage is provided to the named insured and any other person using an owned vehicle with permission of the insured. The express language contained within the endorsement which states: "All other terms and conditions of this policy remain the same," demonstrates that the endorsement merely modifies the policy language of paragraph II(c) to the extent that coverage to any person using the scheduled vehicle means any individual who is not under 21 years of age.

Nevertheless, even if the applicable provision of the policy and the endorsement were in conflict, the endorsement would prevail. Where a conflict exists between the provisions of the policy proper and the provisions of the attached rider or endorsement, the rider or endorsement will control, and, if any exceptions to the general area of protection exist, they must be stated in such language and bold type as to warrant the conclusion that the insured understood and accepted them. (*J. M. Corbett Co. v. Insurance Company of North America* (1976), 43 Ill. App. 3d 624, 627, 357 N.E.2d 125.) Here, defendant's written acceptance of the endorsement indicates he understood and accepted the language of the endorsement.

■■ It is the trial court's function to construe an insurance policy as written. (*Porterfield v. Truck Insurance Exchange* (1960), 28 Ill. App. 2d 195, 199, 171 N.E.2d 108.) In the instant case the trial court did not carry out its function but rather tried to enforce liability where the clear terms of the policy limited it. In our view, the trial court's determination that the applicable policy provision and the endorsement created inconsistencies in the policy which had to be construed strictly against the plaintiff was erroneous.

For the reasons set forth, we reverse the judgment of the circuit court of Kane County granting summary judgment and remand the case for further proceedings.

Reversed and remanded.

UNVERZAGT and SCHNAKE, JJ., concur.